In the Matter of the Appraisal for Taxation of the Property of HENRY BRONSON, Deceased.

1. TRANSFER TAX ACT — BONDS OF DOMESTIC CORPORATIONS HELD BY NON-RESIDENT DECEDENT AT HIS DOMICILE. Bonds of corporations incorporated under the laws of this state, owned by and in the possession of a non-resident decedent at his domicile out of this state at the time of his death, and which then pass to non-residents, are not subject to taxation under the Transfer Tax Act (Laws of 1892, chap. 399).

2. CERTIFICATES OF STOCK OF DOMESTIC CORPORATIONS HELD BY NON-RESIDENT DECEDENT AT HIS DOMICILE. Shares of stock in corporations incorporated under the laws of this state, held by, and represented by certificates in the possession of, a non-resident decedent at the time of his death at his domicile out of this state, and which then pass to non-residents, are subject to taxation under the Transfer Tax Act of 1892.

*Matter of Bronson,* 1 App. Div. 546, modified.

(Argued April 20, 1896 ; decided October 6, 1896.)

APPEAL from order of the Appellate Division of the Supreme Court in the first judicial department, made February 21, 1896, which reversed an order of the surrogate of New York county affirming an appraisement and determination of a transfer tax.

The facts, so far as material, are stated in the opinions.

*Emmet R. Olcott* for the comptroller of the city of New York, appellant. The property subject to the tax includes all

1

property or interest therein over which this state has any jurisdiction for the purposes of taxation. (*Green* v. *Van Buskirk*, 5 Wall. 307; *Hervey* v. *Locomotive Works*, 93 U. S. 671; *Harkness* v. *Russell*, 118 U. S. 679; *Walworth* v. *Harris*, 129 U. S. 355; *In re McPherson*, 104 N. Y. 316; *People* v. *E. T. Co.*, 96 N. Y. 387; *Stuart* v. *Palmer*, 74 N. Y. 183; *Gordon* v. *Cornes*, 47 N. Y. 608; *People ex rel.* v. *Lawrence*, 41 N. Y. 137; *Brewster* v. *City of Syracuse*, 19 N. Y. 116.) The bonds and stocks of the domestic railroad corporations standing in the name of the decedent and owned by him at the time of his death were property within the state. (Laws of 1892, chap. 399, § 1; *In re Enston*, 113 N. Y. 182; *In re Romaine*, 127 N. Y. 88; *In re Phipps*, 59 N. Y. S. R. 771; Angell & Ames on Corp. [11th ed.] §§ 104, 111; *Plimpton* v. *Bigelow*, 93 N. Y. 598; *In re Prime*, 136 N. Y. 360; *People ex rel.* v. *Comrs. of Taxes*, 23 N. Y. 220; *Burr* v. *Wilcox*, 22 N. Y. 556; *Jermain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 492; *Burrall* v. *B. R. R. Co.*, 75 N. Y. 211.) The contention of counsel for the executors, that because the certificates of stock in the name of decedent in these domestic corporations, and the bonds of the domestic corporations registered in the name of the decedent, were kept by decedent at his domicile in Connecticut for some years prior to his death, therefore the stock and bonds were not within this state, is without foundation. (*Plimpton* v. *Bigelow*, 93 N. Y. 598; *Jermain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 492; *Burr* v. *Wilcox*, 22 N. Y. 556; *In re Enston*, 113 N. Y. 181; Cook on Stock, etc. [3d ed.], § 15; *In re Swift*, 137 N. Y. 77; *In re Merriam*, 141 N. Y. 479; *In re Hoffman*, 143 N. Y. 327; *In re Cullum*, 145 N. Y. 593; *In re Hamilton*, N. Y. Law J. Jan. 31, 1896; *Mager* v. *Grima*, 8 How. [U. S.] 491; *Frederickson* v. *State of Louisiana*, 23 How. [U. S.] 447; *Wallace* v. *Myers*, 38 Fed. Rep. 185; *Pollock* v. *F. L. & T. Co.*, 157 U. S. 578.) The possibility of double taxation works no exemption. (*Finley* v. *City of Philadelphia*, 32 Penn. 381; *Davidson* v. *New Orleans*, 96 U. S. 97; *Eyre* v. *Jacob*, 14 Gratt. 427.)

*Howard Mansfield* for executors and legatees, respondents. The facts must make out an undoubted case of the application of the act to the bonds and stocks in question before the tax can be imposed as to either. (*In re Enston*, 113 N. Y. 174; *In re Swift*, 137 N. Y. 77; *In re James*, 144 N. Y. 6.) There should be no question that the bonds are exempt from the tax. (Laws of 1892, chap. 399, § 1; *In re Hoffman*, 143 N. Y. 327; *In re James*, 144 N. Y. 6; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *State Tax Case*, 82 U. S. 300; *In re Swift*, 137 N. Y. 85; *People ex rel. Manh. R. Co.* v. *Barker*, 146 N. Y. 304; *In re Enston*, 113 N. Y. 180; *In re Romaine*, 127 N. Y. 80; *People ex rel. E. El. L. Co.* v. *Campbell*, 138 N. Y. 543; *In re Phipps*, 143 N. Y. 641.) Nor is there any sound legal theory on which the stocks can be consistently declared subject to the transfer tax. (*Queen* v. *Arnaud*, 9 Ad. & El. [N. R.] 806; *Hyatt* v. *Allen*, 56 N. Y. 553; *Plimpton* v. *Bigelow*, 93 N. Y. 592; *Burrall* v. *B. R. R. Co.*, 75 N. Y. 216; *Jermain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 492; *People ex rel. Jefferson* v. *Smith*, 88 N. Y. 576; *People ex rel. E. El. L. Co.* v. *Campbell*, 138 N. Y. 543; *San Francisco* v. *Mackey*, 22 Fed. Rep. 602; *Hoyt* v. *Comrs. of Taxes*, 23 N. Y. 228.) The weight of authority within and without the state is decisively against the application of the Transfer Tax Law to stocks of a domestic corporation owned by a non-resident decedent. (*In re Alexander*, 3 Penn. L. J. 448; *Commonwealth's Appeal*, 11 Weekly Notes of Cases, 492; *In re Del Busto*, 23 id. 111; *In re Bacon*, 3 Del. County Rep. 603; *In re Coleman*, 159 Penn. St. 231; *C. Nat. Bank* v. *Sharp*, 53 Md. 531; *In re James*, 144 N. Y. 12; *People ex rel. Jefferson* v. *Smith*, 88 N. Y. 576; *In re Merriam*, 141 N. Y. 479; *In re Enston*, 113 N. Y. 174.) To allow the claim of the comptroller that these bonds and stocks are subject to the New York transfer tax would also expose them to double taxation, a result or possibility which this court has repeatedly declared should be avoided, if possible. (*In re Enston*, 113 N. Y. 183; *In re Swift*, 137 N. Y. 77; *In re James*, 144 N. Y. 11.)

GRAY, J.   The decedent was domiciled in the state of Connecticut, where he died in 1893; leaving, by his will, his

residuary estate to his two sons, also residents of that state. A part of the residuary estate consisted in shares of the capital stock and in the bonds of corporations incorporated under the laws of this state and which were in the testator's possession at his domicile. They had been handed over to the residuary legatees, prior to the institution by the comptroller of the city of New York of this proceeding to appraise them for the purposes of taxation under the Transfer Tax Act (Chap. 399, Laws of 1892). It was held by the Appellate Division of the Supreme Court, reversing the decree of the Surrogate's Court in the county of New York, that the executors were not liable to pay a transfer tax upon the basis of the stocks and bonds in question. The claim of the comptroller is that, both by the terms of that act and by force of the Statutory Construction Law of the state, and upon the theory that these bonds and shares represent interests in corporations incorporated under the laws of this state, they were, although not physically within the state, properly assessed for the purposes of such taxation.

The act, under which this tax was sought to be collected, was passed in 1892, (Chap. 399, Session Laws), and is known as "The Transfer Tax Act." By section one, a tax is imposed upon the transfer of any real or personal property of the value of five hundred dollars or over, in the following cases, viz.: when the transfer is by will or by the intestate laws of this state from a resident decedent; or when the transfer is by will or intestate law, of property within the state and the decedent was a non-resident at the time of his death. The important words to be noticed in this section, which imposes the tax, are, in the case of a non-resident decedent, "property within the state." Their importance is evident; inasmuch as the attempt of the state to collect a tax, where the decedent was not subject to its jurisdiction, is limited to that which possesses the legal attributes and characteristics of property here. In that connection, reference may be made to section 22 of the act, which defines the word "property," as used in the act, as meaning all prop-

erty, or interest therein, "over which this state has any jurisdiction for the purposes of taxation." In the endeavor to ascertain the intention of the legislature, with respect to what should be assessable for the purposes of taxation as property under this act, we need go no further than the act itself; which, in imposing the tax, undertakes, in addition, to give a definition to property, the transfer of which by will, or by the intestate laws of the state, creates the liability to taxation. It seems unimportant to consider that section of the Statutory Construction Law, which gives a definition to the term "personal property" (Chap. 677, Laws of 1892, § 4); if indeed applicable. The act contains within itself a complete system for the taxation of transfers of property, in cases of testacy and of intestacy, and, also, controlling definitions for such words used in its sections as, in the judgment of the Legislature, might seem to require definition. The section of the Statutory Construction Act, in terms, is only applicable, as I think, to a statute, where its general object, or the context of the language construed, or other provisions of law, do not indicate that a different meaning is intended.

Whatever may be argued in support of the right to subject the bonds of domestic corporations to appraisement for taxation purposes under this act, when physically within the state, upon some theory that they are something more than the evidences of a debt and constitute a peculiar and appreciable species of property, within the recognition of the law as well as of the business community, such argument is certainly unavailing in this case; where the bonds themselves were at their owner's foreign domicile. They did not represent "property within the state" in any conceivable sense. What property they represented consisted in the debt of their maker and that species of property, unquestionably, must be considered to be, as a chose in action, the holder's and owner's and to be inseparable from his personality. The Supreme Court of the United States held in the *Foreign Held Bonds Case* (15 Wall. 300), where the state of Pennsylvania

assumed to tax the interest payable upon bonds issued by a Pennsylvania corporation, secured by a mortgage upon its property and held by a non-resident, that the tax was invalid. It will be profitable to quote some of the language of the opinion in that case, the soundness of which has never been questioned : " But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense ; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. The principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement." It seems difficult to furnish an argument, in support of the view that the debt owing to a creditor is the property, which follows him everywhere, and not the written or printed obligation expressing the indebtedness, that is not resumed in the foregoing opinion. In our consideration of the question, we should not lose sight of the fact that the state, through the Transfer Tax Act, is exerting its taxing power only over that as to which it had jurisdiction for the purposes of taxation ; and we should not be confused, in that consideration, by statutes or decisions which bear upon the exercise of that power over residents within its territorial limits.

The Inheritance Tax Act, or, as it is known to-day, the Transfer Tax Act, imposes a tax upon the right of succession. (*In re Swift*, 137 N. Y. 77 ; *In re Merriam*, 141 id. 479 ; *In re Hoffman*, 143 id. 329.)

It was said of it by Judge ANDREWS, in the *Enston Case* (113 N. Y. 181): "It is not a general but a special tax, reach-

ing only to special cases and affecting only a special class of persons;" and, as he also observed, in substance, there must be a clear warrant in the law for the imposition of the tax. In the *Swift Case* (137 N. Y. 77), it was decided that the personal property of a resident decedent, wheresoever situate, within or without the state, is subject to the tax.    The act of 1885 was under discussion, and the general theory of the Inheritance Tax Law was considered, and it was held to be a fundamental requirement that there should be jurisdiction over the subject taxed, or an actual dominion over the subject of taxation at the time the tax is imposed.    In the *Phipps Case* (77 Hun, 325), which was affirmed here upon the opinion of the General Term (143 N. Y. 641), the question was whether the right to an unpaid legacy left to a non-resident decedent in the will of a resident decedent was property within this state and, as such, assessable for purposes of taxation under the act of 1887.    It was held that it was not such property; upon the principle that the residence of the debtor does not fix the *situs* of the debt, but the domicile of the creditor. It was there observed that " a mere chose in action, a right to recover a sum of money, has never, as yet, been given the attribute of tangibility."    By the act of 1887 (Chap. 713), the legislature had amended the Inheritance Tax Law, as it existed under the act of 1885, so as to impose a succession tax with respect to the property of non-resident decedents, which should be within this state.    In the *James Case* (144 N. Y. 6), we had occasion to consider the operation of that act.    An Englishman, who died abroad, left property deposited within this state, consisting in stocks and bonds of corporations of this and of other states.    The question was considered whether, in view of these words in the act, "which property shall be within this state," it was its intendment to reach, for purposes of taxation, any personal property that was not within the state, either in fact or because of the domicile here of its owner.    We thought not and that it would be highly improper to impute to the legislature an intention to tax that over which there was no jurisdiction.

It is obvious that the state has no jurisdiction over a right of succession which accrues under the laws of the foreign state. That is something in which this state has no interest, and with which it is not concerned. The legal title to these bonds, or the debts they represent, vested in the personal representatives of the decedent by force of foreign laws. The decedent was a creditor, to whom the obligors in the various bonds were indebted; the extent and terms of whose obligation were evidenced by those bonds. The legal *situs* of the indebtedness was at the creditor's domicile and as the actual *situs* of the bonds themselves was, also, there, upon no theory can it be held that the provisions of the Transfer Tax Act could reach them in its operation. The logical result of the proposition which has been established, that the tax is upon the right of succession to property, is, in my opinion, to confine the operation of this law, where non-residents' estates are concerned, to cases of property having a tangible and visible existence, and being the actual subject of the ownership.

But, with reference to the shares of capital stock owned by the decedent, I think we are compelled to differ with the Appellate Division. The attitude of a holder of shares of capital stock is quite other than that of a holder of bonds, towards the corporation which issued them. While the bondholders are simply creditors, whose concern with the corporation is limited to the fulfillment of its particular obligation, the shareholders are persons who are interested in the operation of the corporate property and franchises and their shares actually represent undivided interests in the corporate enterprise. The corporation has the legal title to all the properties acquired and appurtenant; but it holds them for the pecuniary benefit of those persons who hold the capital stock. They appoint the persons to manage its affairs; they have the right to share in surplus earnings and, after dissolution, they have the right to have the assets reduced to money and to have them ratably distributed. Each share represents a distinct interest in the whole of the corporate property. As said

in *Jermain* v. *L. S. & M. S. R. Co.* (91 N. Y. 492), it "represents the interest which the shareholder has in the capital and net earnings of the corporation;" or, as PARKE, B., put it, in *Bradley* v. *Holdsworth* (3 M. & W. at p. 424), it is "a right to have a share of the net produce of all the property of the company." Corporate shares must be regarded as property within the broad meaning of that term. Certificates of stock, in the hands of their holder, represent the number of shares which the corporation acknowledges that he is entitled to. In legal contemplation the property of the shareholder is either where the corporation exists, or at his domicile; accordingly as it is considered to consist in his contractual rights, or in his proprietary interest in the corporation. In the case of bonds, they represent but a property in the debt and that follows the creditor's person. Hence, it cannot be said, if the property represented by a share of stock has its legal *situs* either where the corporation exists, or at the holder's domicile, as we have said in the *Enston* and *James* cases, (*In re Enston*, 113 N. Y. 181; *In re James*, 144 id. 12), that the state is without jurisdiction over it for taxation purposes. As personalty, the legal situs does follow the person of the owner; but the property is in his right to share in the net produce, and, eventually, in the net residuum of the corporate assets, resulting from liquidation. That right as a chose in action must necessarily follow the shareholder's person; but that does not exclude the idea that the property, as to which the right relates and which is, in effect, a distinct interest in the corporate property, is not within the jurisdiction of the state for the purpose of assessment upon its transfer through the operation of any law, or of the act of its owner. The attempt to tax a debt of the corporation to a non-resident of the state, as being property within the state, is one thing, and the imposition of a tax upon the transfer of any interest in, or right to, the corporate property itself is another thing. The corporation is the creation of state laws and those who become its members, as share-

holders, are subject to the operation of those laws, with respect to any limitation upon their property rights and with respect to the right to assess their property interests for purposes of taxation.

It results from these views that the order appealed from must be reversed, to the extent that it reversed the order of the surrogate affirming an assessment upon the estate of the decedent based upon an appraisal of the shares of stock of domestic corporations, and the determination of the surrogate in that respect is affirmed. In other respects the order appealed from is affirmed and the matter is remitted to the Surrogate's Court, to be proceeded with in conformity with our opinion.

Under the circumstances, no costs are awarded to either party.

VANN, J. (dissenting). Henry Bronson, for many years a resident of New Haven, Conn., died in that city on the 26th of November, 1893, leaving a will which was admitted to probate in the state of Connecticut, but was never proved or filed in the state of New York. By this will, after making some gifts to his grandchildren, he gave the bulk of his estate to his two sons, now his executors, both of whom are non-residents of this state. At the time of his death he owned bonds of the value of $18,200, and stocks of the value of $437,393.25, all issued by corporations organ ized under the laws of the state of New York. Said securities, as written instruments, were not within this state when the decedent died, but were in the state of Connecticut, where he had his domicile. They had never been kept in the state of New York, either for safety or any other purpose, and before the initiation of these proceedings they had been formally transferred by the executors to themselves, as residuary legatees. Upon the report of the appraiser, who included both bonds and stocks in his appraisal, the surrogate decided that they were subject to a transfer tax, and made the usual order, which was affirmed by him on appeal, but his

determination was reversed by the Appellate Division, and the case is now here upon appeal from their order of reversal.

Two questions are presented for decision, viz.: 1. Whether capital, invested by a non-resident, or by his assignor, in corporations organized and doing business in this state, for which certificates of stock in such corporations were issued to him, is subject to a succession tax under our laws, when such certificates, although standing in his name as registered on the the books at the date of his death, were habitually kept by him in the state where he resided? 2. Whether capital, lent to such corporations by a non-resident, or his assignor, for which bonds were issued to him, is taxable under like circumstances?

In order to determine these questions, it is necessary to construe certain sections of a statute passed in 1892, entitled "An act in relation to taxable transfers of property." (L. 1892, chap. 399.) The first legislation upon the subject in this state was in 1885, when an act was passed " to tax gifts, legacies and collateral inheritances in certain cases." (L. 1885, ch. 483.) This statute was so crude in structure and doubtful in meaning as to cause much litigation, which led to its amendment by the legislature, even before the first questions that arose had been passed upon by the courts. (L. 1887, ch. 713; *In re Enston,* 113 N. Y. 174; *In re Romaine,* 127 N. Y. 80.) Other amendments followed in quick succession (L. 1889, ch. 307; L. 1889, ch. 409; L. 1890, ch. 553; L. 1891, ch. 215; L. 1892, ch. 169), until finally, owing in part to conservative construction by the courts and in part to the growth of public sentiment upon the subject, the statute was thoroughly revised, so as to meet the difficulties encountered in its enforcement, and the result was the act now before us for consideration. That act, as we have already declared, " was passed with knowledge of our decisions and in view of our construction, and was obviously intended in some respects to compel on our part different conclusions." (*In re Hoffman,* 143 N. Y. 327, 331.) The history of legislation upon the subject shows a constant advance in the grasp of the statute, as nearly every

amendment reached out farther and took in more, until at last the intention of the legislation was limited only by its power, for its command was to "include all property or interest therein, whether situated within or without this state, over which this state has any jurisdiction for the purposes of taxation." (L. 1892, ch. 399, sec. 22.)

This sweeping intention on the part of the legislature doubtless had its origin in the fact that personal property, as a general thing, when its great value is taken into account, escapes taxation during the lifetime of its owner. Real estate, owing to its fixed location, presents a problem of slight difficulty to the legislator in his effort to provide means for the support of government, for it cannot escape the view of either the assessor or collector, and the result is that it pays an undue proportion of the annual tax levy. Personal property, however, especially when it exists, practically, in such a form that, to the extent of millions of dollars, it can be carried in one's pocket, has long perplexed the legislator and the statesman, owing to its adroitness and success in avoiding taxation. In 1891, the governor, in his annual message to the legislature, made pointed allusions to the difficulty of reaching personal property, and recommended such legislation as I am now about to consider, in order that, as stated by him, "personal estate can at least be subjected to one tax, although it may never have been able to be reached during the life of the decedent." (Dos Passos on Inheritance Tax Law, 2d ed., sec. 5.) It is evident from this that the executive regarded the laws then existing as too narrow, and that he thought public policy required statutes of broader scope. The legislature, apparently, was of the same mind, for not long after the act was passed which it is now our duty to construe.

While the courts should carefully gather the intention of the legislature, so far as may be, from the language of the statute, they should also bear in mind the facts which led to the enactment in its present form; for the evil to be remedied, the difficulty of applying the remedy, and the changes made in order to force a construction in harmony with the growth of

legislative purpose may be of material aid in reaching the correct conclusion.

The object of the statute, as indicated by the title, is no longer simply " to tax gifts, legacies and collateral inheritances," but to bring under taxation all " taxable transfers of property." This broad purpose pervades the entire act, as a careful reading of its provisions will show.

The statute provides that, subject to certain exceptions," a tax shall be   *   *   *   imposed upon the transfer of any property, real or personal,   *   *   *   or of any interest therein, or income therefrom,   *   *   *   when the transfer is by will or by the intestate laws of this state " of property of a resident, or, " when the transfer is by will or intestate law of property within the state, and the decedent was a non-resident of the state at the time of his death." (Sec. 1.) Two classes of cases are thus provided for : 1, the property of residents, passing under the laws of this state, without regard to where the property may be ; 2, the property of non-residents, passing under the laws of another state, when the property is within this state. What is meant by the phrase " property within the state " is a question so difficult that we are unable to unite in declaring its meaning, but are compelled to decide it by the vote of a majority. The question, in concrete form, is whether the stocks and bonds under consideration, or the interests they represent, are " property within the state." Light is thrown upon the subject by section nine, formerly section eleven, but radically changed, which provides that " if a foreign executor, administrator or trustee shall assign or transfer any stock or obligations in this state standing in the name of a decedent, or in trust for a decedent, liable to any such tax, the tax shall be paid to " an officer designated, " on the transfer thereof." The phrase " liable to any such tax " refers to such " stocks and obligations " as are not expressly exempted, owing to the limited value of the entire estate and the close relationship to the decedent of the persons to whom it passes. (Sec. 2.)

What did the legislature mean by " stock or obligations in

this state standing in the name of the decedent?" This is the same question in another form as that previously asked, but the change from general to specific words of description in the statute has much significance. The same section commands depositaries, both corporate and personal, "holding securities or assets of a decedent" not to "deliver or transfer the same to the executors, administrators or legal representatives of said decedent, unless notice of the time and place of the intended transfer" is given to the proper authorities, and a failure to give the notice renders the depositary personally liable "to the payment of the tax." The word "assets," as thus used, is the most comprehensive that could be used to expand the meaning of the statute.

There is but one more section that has a direct bearing upon the question in hand, and that is the twenty-second, which relates to "definitions," and is of especial importance, not only because it is new, but because it emphasizes the purpose of the statute. It provides that "the words 'estate' and 'property' as used in this act, shall be taken to mean the property or interest therein of the testator" or "intestate * * * passing or transferred to those not therein specifically exempted from the provisions of this act * * * and shall include all property or interest therein, whether situate within or without this state, over which this state has any jurisdiction for the purposes of taxation." This language, although not as specific as could be used, is so comprehensive as to include whatever the legislature has power to subject to taxation. It does not mean jurisdiction as theretofore exercised through other statutes, for it does not say so, but it means whatever jurisdiction the state can exercise. Both the words used and the growing purpose of the legislature show this. The section further provides that "the word 'transfer' as used in this act shall be taken to include the passing of property, or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise," or "bequest * * * in the manner herein described."

Partial directions for the construction of the act are found

in section twenty-five, which requires that such parts as " are substantially the same as those of laws existing on April 30th, 1892," which was the day before the statute took effect, " shall be construed as a continuation of such laws, modified or amended according to the language employed in this act and not as new enactments." This is the rule of construction provided by the Statutory Construction Law, that is " applicable to every statute, unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning, or application was intended." (L. 1892, ch. 677, secs. 1, 32.) It does not exclude from our consideration, when construing the Transfer Tax Act, the definition of " personal property " as laid down in the Statutory Construction Law, which is retroactive as well as prospective in its effect, and applies to all statutes, except as otherwise provided. " The term personal property " as defined by that law, " includes chattels, money, things in action, and all written instruments, themselves, as distinguished from the rights or interests to which they relate, by which any right, interest, lien or incumbrance in, to or upon property, or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, wholly or in part, and everything, except real property, which may be the subject of ownership." (L. 1892, ch. 677, sec. 4.)

It is difficult to conceive a definition more comprehensive than this, for it includes intangible property, as well as tangible, written instruments, as such, and everything, except real property, that is capable of being owned or transferred. Thus the legislature has declared its intention to subject to a transfer tax everything owned by a resident at the time of his death, and everything within this state, owned by a non-resident at the time of his death, with certain exceptions not now important. It has specifically mentioned " stocks and obligations in this state standing in the name of a decedent" as well as " securities and assets," and has prohibited the transfer thereof, except upon notice to an agent of the state; and, finally, it has summed up its purpose by saying that

the succession to whatever may be the subject of ownership, whether within or without the state, that it can tax, it intended to tax.

The question at once arises, what limitation is there upon the power of the legislature with reference to the subject of taxation. It answering this question it must be borne in mind that the tax under consideration is not a tax upon property, but upon the transfer of property, under succession laws, on the death of the owner. (*In re Merriam*, 141 N. Y. 479 ; *In re Swift*, 137 N. Y. 77.)

The position of the Supreme Court of the United States upon the subject appears from the following authorities: *Mager* v. *Grima* (8 How. [U. S.] 490) ; *Green* v. *Van Buskirk* (5 Wall. 307) ; *State Tax on Foreign Held Bonds* (15 Wall. 300, 319) ; *Hervey* v. *Rhode Island Locomotive Works* (93 U. S. 664).

In deciding the case last cited the court declared " that every state has the right to regulate the transfer of property within its limits, and that whoever sends property to it impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides." (p. 671.)

The *Foreign Held Bonds* case involved a tax upon property, not upon the right of succession to property. This right was not considered by the court, and it rests upon principles utterly different from those applicable to taxation upon property itself. It would be a startling proposition for that learned court to hold that a state may not regulate the transfer of property within its own own limits by subjecting it to any reasonable condition.

Property owned by a resident gives rise to no question, for there is jurisdiction of the person of the decedent and of his personal representatives. Tangible property, which is apparent to the senses, presents no difficulty, even when it belonged to a non-resident decedent, provided it is physically present in the state. Intangible property, however, because it has no physical presence, has long perplexed both those who

make and those who expound the law. It may exist, as it
were, in the air, for it may consist of a right, which, if denied,
must be established by parol evidence. Such rights are ordi-
narily regarded as attached to the person of the owner, but
they are not inseparable from him, because creditors are per-
mitted to seize them for the payment of debts, even in a state
where the owner never resided and never was personally
present. (*Plimpton* v. *Bigelow*, 93 N. Y. 592, 596, 600;
Code Civ. Pro., secs. 648, 2478; see, also, L. 1830, ch. 320,
sec. 16; *Beers* v. *Shannon*, 73 N. Y. 292; Story's Conflict
of Laws, sec. 380; *Catlin* v. *Hull*, 21 Vt. 158; *Alvany* v.
*Powell*, 2 Jones Eq. 51; *State* v. *Dalrymple*, 70 Md. 294.)

In *Plimpton* v. *Bigelow* (*supra*) this court said: "We do
not doubt that shares (of stock in a domestic corporation) for
the purpose of attachment proceedings may be deemed to be
in the possession of the corporation which issued them, but
only at the place where the corporation by intendment of law
always remains, to wit, in the state or country of its creation."
(p. 600.)

There is nothing, therefore, in the nature of the most intan-
gible right, such as a debt without any written evidence
thereof, to prevent the legislature from giving it a *situs* apart
from the residence of its owner, but in order to permit this it
must have some practical existence in the state that assumes
jurisdiction over it either for the purpose of taxation or the
collection of debts. In the latter case the residence of the
debtor is deemed to give the debt a practical existence in the
state where the debtor resides, because the non-resident cred-
itor, if his claim is not paid voluntarily, must go where his
debtor is and invoke the aid of the laws in force there, in
order to collect it. If the legislature has jurisdiction over
intangible property for the purpose of enabling creditors to
collect debts, why has it not jurisdiction over it in order to
provide means for the support of government, including the
courts and other agencies provided to enable non-residents as
well as residents to enforce collection of their claims? The
most serious obstacle thus far encountered in the effort to sub-

ject to taxation the transfer of all the personal property of
non-resident decedents, which has a practical existence in this
state, is the legal maxim, *mobilia personam sequuntur*.   This
is a mere fiction of the law, and is not, as we have seen,
universal in its application.   It is based partly on comity
between states and partly on convenience of administration.
Long as it has stood, and well embedded in the law as it is, it
is not paramount to a statute, and must stand aside whenever
the legislature directs it to give way.   As said by Judge COM-
STOCK : " Like other fictions it has its special uses.   It may be
resorted to when convenience and justice so require.   In
other circumstances the truth and not the fiction affords, as it
plainly ought to afford, the rule of action.   *   *   *   Accord-
ingly there seems to be no place for the fiction of which we
are speaking in a well-adjusted system of taxation."   (*People
ex rel. Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224, 228.)

So Judge STORY said, the legal fiction "yields whenever it
is necessary for the purposes of justice that the actual *situs*
of the thing should be examined.   *   *   *   Hence it is that,
whenever personal property is taken by arrest, attachment or
execution within a state, the title so acquired under the laws
of the state is held valid in every other state, and the same
rule is applied to debts due to non-residents, which are sub-
jected to the like process under the local laws of a state."
(Conflict of Laws, § 550.)

Mr. Justice GRAY, of the Supreme Court of the United
States, referring to this maxim, said that it " grew up in the
middle ages, when movable property consisted chiefly of gold
and jewels, which could easily be carried by the owner from
place to place, or secreted in spots known only to himself.
In modern times, since the great increase in amount and vari-
ety of personal property not immediately connected with the
person of the owner, that rule has yielded more and more to
the *lex situs*.   *   *   *   For the purposes of taxation, as has
been repeatedly affirmed by this court, personal property may
be separated from its owner ; and he may be taxed, on its
account, at the place where it is, although not the place of his

own domicile, and even if he is not a citizen or a resident of the state which imposes the tax." (*Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, 22.)

Long ago the legislature subjected to general taxation certain kinds of debts due to non-residents, and the act was unanimously sustained by the Commission of Appeals. (L. 1851, ch. 371 ; *People ex rel. Westbrook* v. *Trustees of Ogdensburgh*, 48 N. Y. 390.)

Another statute, which virtually repealed the maxim, *pro tanto*, as to foreign capital invested in banking business in this state, was referred to by this court as " designed to remedy an evil, then existing, which mainly consisted in persons residing near the borders of our state carrying on trades and business here, in competition with our own citizens, and while enjoying the protection of our laws, escaping all the burdens of taxation by having their residences beyond the boundary line." (L. 1855, ch. 37 ; *Williams* v. *Board of Supervisors*, 78 N. Y. 561, 568.)

In the *People ex rel. Jefferson* v. *Smith* (88 N. Y. 576, 581) Judge EARL said : " That choses in action can have a *situs* away from the domicile of the owner for the purpose of taxation and for other purposes, is frequently manifested in the statutes of this state. * * * I think it may safely be said that the legal fiction that choses in action always attend the owner, and have a legal existence only at the place of his domicile, has been frequently ignored by the legislature in framing our system of taxation."

That the legislature intended to do away with this fiction, so far as it tended to restrict the scope of the act and to give personal property a special *situs* for the purposes of taxation, is evident from the quotations already made from the statute, and especially from the declaration that " all property or interest therein " capable of ownership, shall be included, " whether situated within or without this state, over which this state has any jurisdiction for the purpose of taxation ; " that *foreign* executors shall not " transfer any stock or obligations standing in the name of a decedent," without payment

of the tax, and that no depositary shall transfer "securities or assets of a decedent," without giving the required notice. (Secs. 9 and 22.)

"Stock * * * in this state standing in the name of a decedent," apparently refers to shares of stock in a domestic corporation. What are shares of stock, and what rights does the owner thereof enjoy? Judge ANDREWS answered this question when he wrote in *Plimpton* v. *Bigelow* (*supra*), that "the right which a shareholder in a corporation has by reason of his ownership of shares, is a right to participate according to the amount of his stock in the surplus profits of a corporation on a division, and ultimately on its dissolution, in the assets remaining after payment of its debts."

Chief Justice SHAW answered it when he said that "the right is, strictly speaking, a right to participate, in a certain proportion, in the immunities and benefits of the corporation, to vote in the choice of their officers and the management of their concerns; to share in the dividends and profits and to receive an aliquot part of the proceeds of the capital on winding up and terminating the active existence and operations of the corporation." (*Fisher* v. *Essex Bank*, 5 Gray [Mass.], 377.)

Judge EARL, referring to the same subject, has said that "a share of stock represents the interest which the shareholder has in the capital and net earnings of the corporation. The interest is of an abstract nature; that is, the shareholder cannot by any act of his, nor ordinarily by any act of the law, reduce it to possession." (*Jermain* v. *Lake Shore & M. S. R. Co.*, 91 N. Y. 492.)

"A share of stock is an incorporeal, intangible thing." (*Neiler* v. *Kelley*, 69 Pa. St. 407.)

"The expression, 'shares of stock,' when qualified by words indicating number and ownership, expresses the extent of the owner's interest in the corporation property. The interest is equitable and does not give him the right of ownership to specific property of the corporation, but he does own the specific stock held in his name, and under the rules of law,

the property of the corporation is held by the corporation in trust for the stockholders." (*Bridgman* v. *City of Keokuk*, 72 Iowa, 42.)

Shares of stock should be distinguished from certificates of stock, which are merely evidence as to the number of shares to which the holder of the certificate is entitled. (*Jermain* v. *Lake Shore & M. S. R. Co.*, 91 N. Y. 483, 492.) The same rights exist whether any certificate is issued as evidence of those rights or not. Formerly no certificates were issued, and the only evidence of the existence of the right was upon the books of the corporation. (23 Am. and Eng. Ency. of Law, 484; Cook on Stock and Stockholders, sec. 1.)

What was the nature of the investment made by the decedent when he became the owner of stocks in various corporations organized and doing business in this state? Necessarily he was either an original investor of capital when the corporation was organized, or he acquired the rights of one who was such investor at that time. In either event his rights were the same and the nature of his investment was the same. For instance, he owned stock in a bank doing business in the city of New York. That stock represented an investment of money, either paid in by him when the bank was organized, or by some one else, whose rights, or a part of them, he subsequently purchased. Whether he was an original proprietor or acquired the rights of an original proprietor, he made an investment in a banking business in this state at the moment that he became the owner of the stock. Was that investment property "within this state," under the comprehensive statute now before us? It was capital invested in a corporation organized here, doing business here, having its principal office here, and earning money here with which to pay dividends to the decedent and others. He was one of the owners of the franchise, and had an equitable interest in all the property of the corporation. He assisted, or had the right to assist, in the management of the business, through his power to vote for directors. That right he could exercise only by coming here, in person, or by sending some one with

authority to act for him here. He placed his money physically within the state of New York when he invested it in a New York enterprise, and he left it here under the protection of our laws, and thereby gave it a local habitation here. Under these circumstances should a fictitious *situs* prevail over the actual *situs*, located by himself? If he had invested money in his own name, in tangible personal property in this state, it would have been subject to a succession tax upon his death, although he resided in another state. (*In re Swift*, 137 N. Y. 77.) If, on the other hand, he had invested the same money in the name of a corporation owning the same property, would the investment be free from such tax? If so, by virtue of what provision of the statute would it escape? While there is a difference in form, I see no difference in the substance of the two investments. If a transfer tax can be imposed on the tangible property of a non-resident decedent in this state, why not on the intangible? There is nothing to prevent it except a fiction that has never prevailed against creditors, and why should it against taxation? That fiction is as foreign to questions of revenue as it is to the collection of debts, and it should not be allowed, under the sweeping provisions of the statute, to create a constructive presence in another state, and enable it to prevail over an actual presence, for all practical purposes, within this state. This accords with the position of the court, as declared in the *Enston* case, decided under the act of 1885, where it was said that "the *situs* of the property owned by a shareholder in a corporation is either where the corporation exists, or at the domicile of the shareholder." (*In re Enston*, 113 N. Y. 174, 181). The same thing was said in the *James* case, decided under the act of 1887. (*In re James*, 144 N. Y. 6, 12). The fiction prevails until changed by statute, and that it was repealed as to money invested in this state was expressly held in the *Romaine* case (127 N. Y. 80, 88). Since then the statute has been radically changed in furtherance of the principle that prevailed when that decision was made. Moreover, the state has the right to regulate all transfers of property

made within its limits.  The name of the decedent as a share-holder and the number of shares to which he was entitled were recorded on the stock books of the corporations in which he held stock in this state.  No effective transfer of his stock could be made except by changing the record upon the books in this state.  That transfer is a corporate act, involving a change upon the records of the corporation, and ordinarily the issue of a new certificate, and it must be performed by the corporation in order to vest the title in the foreign execu-tor or legatee.  The old certificate must be brought here and surrendered, or, if lost, the loss must be accounted for here. If the transfer is not made voluntarily, resort must be had to the courts of this state in order to compel it.  So, the owner must come here to get his dividends, as well as to get his final share of the surplus upon the dissolution of the corporation. The capital was not only invested here, but it still remains here, represented by property here, and the owner must come here to get it.  If his rights are withheld, the courts of no state but this can restore them.  The decedent placed his property in this state, and thereby impliedly committed it to the jurisdiction of our laws, then in force and such as might be enacted thereafter, and property subject in any respect to the laws of a state, even if only as regards the transfer thereof, must, if required, pay its share toward the enforcement of those laws.

Look for a moment at the consequences of holding other-wise.  Business corporations might be organized in this state wholly upon foreign capital, a few shares being held in the name of resident directors to make the organization regu-lar, and yet none of the stock, however valuable, be subject to a succession tax.  This would tend to drive business cor-porations into foreign ownership.  If the stock of a corpora-tion belonged one-half to residents and one-half to non-resi-dents, the former would be taxable but the latter not, and thus an unfair discrimination would be made against inhabit-ants of this state.  It is a matter of common knowledge that stocks in domestic corporations are owned to a vast amount by

persons doing business in this state and having their business residence here, but their actual residence in an adjoining state. Did the legislature intend to offer a premium to non residents, by exempting them from burdens that our own citizens have to bear? Did it intend to encourage men of wealth to move out of the state? It is possible that substantially all the stock representing a great property like that of the New York Central Railroad Company, or the Western Union Telegraph Company, in both of which the decedent was a large shareholder, might be owned outside of the state. Should such investments, which are under the exclusive protection of the laws of this state, escape the payment of a tax upon the privilege of succession? Considering its emphatic language, is it reasonable to believe that the legislature intended such a result?

It is urged that the stocks in question may be taxed in the state of Connecticut, and thus be subjected to double taxation. As it happens, this cannot be the result, for the "Inheritance Tax Act" of that state does not apply to lineal descendants, although it covers in terms all property within the jurisdiction of the state passing to collateral relatives, "whether belonging to inhabitants" there "or not, and whether tangible or intangible." (Statutes of Conn. for 1889, ch. 180.) Even if it were otherwise, while double taxation is admitted to be an evil, still it is better that the same property should, at long intervals, be twice taxed than to open such an avenue of escape from taxation as would release millions of foreign capital enjoying the protection of our laws. The great object of the statute is to cause all property, and especially all personal property, subject in any degree to the laws of this state, to pay  a reasonable tax, once during every generation, under such circumstances as to make the burden as light as taxation ever can be, because it is paid for the privilege of succeeding to property, without earning it or paying for it.

The bonds of which the decedent died the owner present a different, but not a difficult question, provided the proper conclusion has been reached in relation to stocks owned by him. An investment in corporate bonds, being practically a loan of capital

to the corporation, differs from an investment in stocks, which represent capital employed by its owners in the business of the corporation.    In the latter case there is an interest in the corporation itself, as well as indirectly in its property, while in the former there is the relation of debtor and creditor. Where the bonds are registered, however, as it was asserted on the argument by the appellant and not denied by the respondent, that these bonds were, the transfer can only be effected at an office designated by the corporation.  (Cook on Stockholders, § 15.)    It would be necessary, upon this assumption, for the person entitled to succession to these bonds to come into the state of New York, directly or indirectly, to complete his title.    The transaction, by virtue of the contract itself, would become localized, for the transfer would require a corporate act in this state done under the sanction of our laws and possibly by virtue of an appeal to our courts.    As an examination of the record, however, does not disclose the fact that the bonds were registered, we must proceed upon the basis that they were not.    The bald question is, therefore, presented whether money lent by a non-resident to a resident corporation, or a bond given as evidence of the debt thus created, is subject to a transfer tax.    While such a bond can be transferred without the state, it cannot be collected against the will of the corporation without coming into this state. Even if collected through the Federal courts, it must be within this state.    The fact that property of the corporation found in another state may be attached there does not change the general rule that the bond represents money lent in this state and that the holder thereof must come here to get it. If secured by a mortgage, the recording act of this state controls.    If not paid when the corporation is dissolved, the statutes of this state apply.    The power of the corporation to borrow or pay depends on our laws, and hence there is an obvious distinction between corporate and private debts. While an individual can contract a debt without the aid of legislation, a corporation cannot borrow nor give a valid bond except under the authority of some statute, general or special.

The state makes the bonds property and preserves them as property. Their value rests on the action of the state government, both in their creation and in the protection subsequently afforded. A debt which owes its existence to our laws, and which could not have been contracted under the laws of any other state, has a local existence for the purpose of taxation. A bond is personal property not only created but protected by the state, and protection and taxation are reciprocal. As the protection is the same, whether the bond is owned by a resident or non-resident, why should the accident of residence affect the power to provide the means of protection? The exercise of the power does not impair the obligation of contracts, because every contract is made in view of possible taxation, and the parties are bound to anticipate that there may be legislation to that end. Tax laws and police laws may lawfully be applied to prior contracts. The place where the contract is made and is to be performed, and where the corporate borrower resides and must always reside, is the place where the legislature may reasonably declare the debt of its own creature to exist as property so as to be taxed. While at common law it follows the person of the owner, it may be given a fixed habitation by statute. This does not result in any discrimination between resident and non-resident bondholders, for succession to the bonds of either is taxed in the same way.

I think that whatever the state government can reach and lay its hands on, as, beyond question, it can on a debt through the process of attachment, has a practical existence here and is subject to the control of our legislature for the purpose of taxation. While I concur in the result reached by the court that the stocks in question are taxable, I am constrained to dissent from its conclusion that the bonds are not taxable.

The order of the Appellate Division should be reversed and that of the surrogate affirmed, with costs.

ANDREWS, Ch. J., BARTLETT, HAIGHT and MARTIN, JJ., concur with GRAY, J.; O'BRIEN, J., concurs with VANN, J.

Ordered in accordance with prevailing opinion.