There can be no question whether the taxes paid by the defendant were chargeable in the amount due, as the mortgage specifically authorizes such payment and such charge. The evidence is undisputed that the taxes were paid prior to the tender of August 2, 1900. It appears that the secretary of the defendant furnished a statement to plaintiff upon request, and that therefrom the plaintiff figured the amount of his tender. The statement is dated May 19, 1900, and the plaintiff testifies that he received it about March 1, 1900, and that he did not make tender until August 2, 1900. But this statement does not purport to show the amount due upon the mortgage, but in form appears to sustain the testimony of the secretary that it was a statement of dues, arrears, and deductions representing the account of the plaintiff as a stockholder in the defendant corporation. Instead of depending on a calculation upon such a statement for the amount to be tendered upon the mortgage several months later, I see no reason why the plaintiff, by simple inquiry, could not definitely have ascertained the exact amount thereof. Further, as, in this case, the mortgagor sues in equity for affirmative relief, the plaintiff was bound to keep his tender good. Tuthill v. Morris, 81 N. Y. 94; Werner v. Tuch, 127 N. Y. 217, 27 N. E. 845, 24 Am. St. Rep. 443; Nelson v. Loder, 132 N. Y. 288, 30 N. E. 369. There is no pretense that he did so. On the contrary, he testifies that after he made tender he returned the money to his brother, from whom he had obtained it. He did not have the amount tendered with him even in court. The learned counsel for the plaintiff insists that the defendant is precluded from taking the objection that the tender was not kept good, for the reason that he did not plead this omission. The plaintiff complained that he had "duly tendered to the defendant corporation the said sum  *  *  *  in full satisfaction and accord of indebtedness," and the defendant denied that the plaintiff duly tendered, etc. I think that the plea of due tender may be held to imply the allegation that the plaintiff has done in the premises all that the law requires to constitute a tender in such a case.

I think that the case was correctly disposed of by the learned special term (Mr. Justice Dickey presiding), and that, therefore, the judgment must be affirmed, with costs. All concur.

---

(75 App. Div. 250.)

## In re PRESTON'S ESTATE.

(Supreme Court, Appellate Division, Second Department. October 3, 1902.)

1. TRANSFER TAX—PROPERTY SUBJECT.

> Bonds of a private individual secured by a mortgage on real estate situated in New York, both bonds and mortgages being kept in good faith outside of the state, are not subject to the taxable transfer acts.

Appeal from order of surrogate, Kings county.

Proceeding to fix the transfer tax on the property belonging to the estate of Mary Preston, deceased. From an order of the surrogate of Kings county vacating an order made on the report of an appraiser, the state comptroller appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Edward H. Fallows, for appellant.
Joseph J. Hood, for respondents.

WOODWARD, J.   Mary Preston, a legal resident of the state of New Jersey, died at her home in Newark, April 21, 1900, possessed of 29 bonds and mortgages, the latter covering certain real estate in the county of Kings.   It is not disputed that the bonds and mortgages were actually in the state of New Jersey at the time of Mary Preston's death, or that they were habitually retained there, and there is no suggestion that there was any bad faith in the matter; but it is urged that these bonds, being secured by mortgages upon real estate in the county of Kings, represented an interest in property in the state of New York, and that as such they are subject to the taxable transfer acts, and must pay the succession tax.   Proceedings having been instituted to fix the transfer tax on property within this state belonging to decedent's estate, the appraiser reported, among other things, the 29 bonds and mortgages as property within this state, and his report was confirmed by an order of the surrogate of Kings county, dated October 18, 1901.   On an appeal being taken, the learned surrogate sustained the appeal, and made an order dated March 3, 1902 (75 N. Y. Supp. 251), modifying the appraisal and order, and deducting from the amount of the property as therein stated the sum of $71,200, the amount of the said bonds, vacating the assessment, and remitting the matter to the appraiser for reassessment in accordance with said order. The state comptroller appeals from the order of modification.

With all of the enlightenment of the learned brief of the appellant, we are unable to distinguish this case, in principle, from In re Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632, where it was held that the bonds of a domestic corporation, owned and held in a foreign state, could not be reached by the taxable transfer acts.   It seems to be conceded here that, if the bonds in question were those of a domestic corporation, they could not be reached outside of the jurisdiction of the state, but it is urged that there is a distinction between bonds of a corporation and the bonds of an individual secured by mortgages upon specific parcels of real estate within the state of New York, and we are asked to distinguish this case from In re Bronson's Estate, supra, upon this theory.   In Re Bronson's Estate, supra, the court cites the Foreign Held Bonds Case, 15 Wall. 300, 21 L. Ed. 179, where the court say: "But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors.   With them they are property, and in their hands they may be taxed.   To call debts property of the debtors is simply to misuse terms.   All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors to whom they are payable, and follows their domicile, wherever that may be.   Their debts can have no locality separate from the parties to whom they are due."   See, also, City of

New Orleans v. Stemple, 175 U. S. 309, 320, 20 Sup. Ct. 110, 44 L. Ed. 174. While it is true that the court does not, in the above excerpt, determine the point suggested by counsel, it is evident that no distinction between corporate bonds and those of individuals occurred to the learned justice who wrote in the Foreign Held Bonds Case, supra, nor yet to the court in Re Bronson's Estate, supra, and no reason suggests itself why we should attempt so subtle a point.

The order appealed from should be affirmed, with costs. All concur.

---

## O'CONNELL v. CLARK et al.

(Supreme Court, Appellate Division, Second Department. October 3, 1902.)

1. SERVANT—INJURIES—DISMISSAL OF COMPLAINT.
   Evidence examined in an action by a ship employé for injuries received while unloading a cargo of jute from the hold, and *held* not error to dismiss the complaint, though it appeared that the place where defendant directed plaintiff to work was more dangerous than where he had been working; it not appearing that this fact was known to defendants, or that plaintiff was not equally well aware of it.

Appeal from special term, Kings county.

Action by James O'Connell against John T. Clark and another for injuries received while unloading defendants' vessel. Judgment dismissing plaintiff's complaint at the close of his evidence, and plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, and HIRSCHBERG, JJ.

William C. Beecher, for appellant.
Herbert C. Smyth (Edwin A. Jones, on the brief), for respondents.

WOODWARD, J. This case has been before this court on three occasions prior to the present; twice on appeals from judgments in favor of the plaintiff (6 App. Div. 33, 39 N. Y. Supp. 454; 22 App. Div. 466, 48 N. Y. Supp. 74), and once upon an appeal from an order permitting the plaintiff to amend his complaint (41 App. Div. 631, 59 N. Y. Supp. 1111). This last appeal modified the order permitting the amendment of the complaint upon terms, which have not been complied with, and the case is thus presented upon the original pleadings. This court has twice held that, under the pleadings as they now stand, the plaintiff had failed to show conditions which would charge the defendant with negligence, and a careful examination of the record now before us fails to disclose evidence sufficient to support the theory of the plaintiff. If the evidence disclosed that the plaintiff, while engaged in the work of removing a cargo of jute from the hold of a vessel, was forcibly placed in a position of known danger by the defendant, there would be some ground for holding that the defendant was chargeable with the results which followed, but, so far as the evidence discloses, there was no more reason to expect a bale of jute to fall upon the plaintiff in the one position than in the other. Several men, experienced and capable