(113 App. Div. 388)

## In re COOLEY'S ESTATE.

(Supreme Court, Appellate Division, First Department. May 11, 1906.)

**1. TAXATION—TRANSFER TAXES—CAPITAL STOCK—ASSESSMENT STATUTES—CONSTRUCTION.**

Shares of stock, owned by a nonresident of New York, in a Massachusetts railroad corporation formed by the consolidation of a New York railroad company with a Massachusetts company, under the authority of the Legislature of Massachusetts and the direct provisions of Laws 1869, p. 2399, c. 917, are subject to the transfer tax law of New York, the same as shares of stock of a domestic corporation owned by a nonresident decedent, and assessable for the purpose of the tax at their full market value on the New York Stock Exchange at the time of the owner's death.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 1681–1683.]

**2. SAME.**

The provisions of Laws 1869, p. 2399, c. 917, authorizing the consolidation of a New York railroad company with a Massachusetts company, and providing that the assessment and taxation of the consolidated company's capital stock should be in the proportion that the number of miles of its railroad situate in New York bears to the number of miles of its railroad in the other state, are not applicable to an assessment under the transfer tax law of the stock of the company owned by a nonresident.

**3. SAME—NATURE OF TAX.**

The transfer tax is not a property tax.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 1673.]

Ingraham, J., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the appraisal, etc., of the property of Francis B. Cooley, deceased. From an order of the Surrogate's Court, affirming an order confirming the report of appraisers fixing the transfer tax on certain shares of stock owned by decedent, his executors and beneficiaries under his will appeal. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

C. P. Howland, for appellant.
C. M. Russell, for respondent.

PATTERSON, J. The executors of and beneficiaries under the last will and testament of Francis B. Cooley, deceased, appeal to this court from an order of one of the surrogates of the county of New York, affirming a former order assessing a transfer tax on shares of capital stock of the Boston & Albany Railroad Company, which shares formed part of the testator's estate. He was a nonresident of the state of New York; his residence being at Hartford in the state of Connecticut, where he died. He owned 426 shares of the capital stock of the Boston & Albany Railroad Company. Appraisers appointed by one of the surrogates of the county of New York assessed such shares for the purposes of the transfer tax law of the state of New York, at their market value on the New York Stock Exchange as of the time of the decedent's death. An order was entered in the

Surrogate's Court fixing a tax upon the basis of such assessed value, and the present appeal brings up for consideration the correctness of that order. The shares have been assessed and taxed, as are those of capital stock of a domestic corporation held and owned by a nonresident decedent, and as representing an interest in property within the jurisdiction of the state of New York which may be assessed and taxed upon its transfer by operation of law or by act of the owner. If they are of the character ascribed to them by the appraisers and the surrogate, the power to impose some tax existed under the transfer tax law. The Matter of Bronson, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632, is a conclusive authority upon that subject. The power to tax the shares, however, depends upon the statute in the state of New York of the corporation by which they were issued. Is it a domestic corporation? It was organized under the laws both of the state of Massachusetts and of the state of New York. It was formed in 1870 by the consolidation or merger of the Boston & Albany Railroad Company, a Massachusetts corporation, and the Albany & West Stockbridge Railroad Company, a New York Corporation; and that consolidation or merger was had pursuant to the authority of a special act of the Massachusetts Legislature, and an act of the Legislature of the state of New York. Chapter 917, p. 2399, Laws 1869.

It has been held that a corporation thus formed, although deriving its chartered existence from different states, may be regarded in each state as a domestic corporation. In the Matter of Sage, 70 N. Y. 220, a railway corporation organized under the act of 1869, by the consolidation of various foreign and domestic railroad companies, was held to be a domestic and not a foreign corporation; and therefore certain provisions of law relating to domestic corporations were held applicable to the new corporation. In St. Louis & San Francisco R. R. Co. v. James, 161 U. S. 562, 16 Sup. Ct. 627, 40 L. Ed. 802, it was said that it is competent for a railroad corporation organized under the laws of one state, when authorized so to do, with the consent of the state which created it, to accept authority from another state to extend its road into such state and receive a grant of powers to own and control, by lease or purchase, railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second state; and that "such corporations may be treated by each of the states whose legislative grants they accept as domestic corporations." In Moody v. Shaw, 173 Mass. 375, 53 N. E. 891, which related to the imposition of a transfer tax upon shares of stock of this same Boston & Albany Railroad, the certificates of which were held by a resident of Maine at the time of his death, it was said that, so long as the railroad held a Massachusetts charter, so long could that state prescribe the payment of a transfer tax as a condition of the right to succeed to stock issued under that charter; and "it does not matter that there is also a New York charter, and that, as things are now, stock issued under one is also stock under the other. The fact that it is so is a privilege granted by the two states reciprocally. But, whenever either state has an interest in distinguishing between the two franchises, it has a right to do so." It is also suggested in the opinion in that case that the fact that all rights are represented by one certificate might possibly create difficulties as to apportionment

where important fractions of the property were in different states, but it would not affect the principle. That suggestion intimates the real question mooted in this case.

The learned counsel for the appellants argues that the shares of stock involved in this proceeding are, if subject to a transfer tax at all, liable only to one, proportionate either to the value of the corporate property, or to the railroad mileage within the state. He has very cogently presented the hardship and inequity of subjecting to a tax, upon the full value, shares which may be held liable to another transfer or inheritance tax in another state, and he has pointed out that, where a tax is levied in the state of New York upon the capital or franchise of a corporation organized as this was, the tax is levied upon an equitable basis. Thus, by the provision of section 6, c. 917, p. 2403, Laws 1869, under which the Boston & Albany Railroad was organized, the assessment and taxation of its capital stock is to be in the proportion that "the number of miles of its railroad situate in this state bears to the number of miles of its railroad situated in the other state," and under section 182 of the general tax law of the state of New York (Laws 1896, p. 856, c. 908), the franchise tax on corporations is based upon the ground of capital employed within the state. If by analogy, or otherwise, the assessment of the shares of stock in this case could be assimilated to or put upon the basis of an assessment of the capital or property or franchise of a corporation within the state, we think the courts would not be reluctant to adopt such a course; but, having regard to the nature of the ownership of the shares as defined by judicial authority, and the interpretation given to the pertinent provisions of the transfer tax law, we are unable to do so.

The assessment of capital, property, or franchise of a corporation for the purposes of taxation, under the general tax laws, differs in nature radically from an assessment made for the purpose of the transfer tax law. In speaking of this subject, more particularly with relation to the franchise tax upon such a corporation, the court said, in the Matter of Palmer, 183 N. Y. 240, 76 N. E. 17, that it is an error to assume that the assessment of corporate franchises for taxation purposes proceeds upon the same principle upon which the interest of a holder of capital stock is taxed. In the former case, the assessment is to be computed upon the value of the property within the state in which the corporate capital is invested. "The assessment of the stockholder, however, is computed upon the value of his interest in the whole of the corporate property, as evidenced by the number of shares of stock which he holds. * * * They evidence the extent of his proprietary interest, and their assessment for taxation purposes must be upon that interest regarded as an entirety, and is unapportionable with reference to the situs of the corporate properties." In the present case, so much of the railway of the Boston & Albany Railroad as is maintained and operated in Massachusetts must be regarded as property owned by it outside of the state of New York. In the case cited, Mr. Palmer, a resident of the state of Illinois, owned at the time of his death a large number of shares of the stock of the New York Central & Hudson River Railroad. It appeared that 36 per cent. of the corporate capital of that company was invested in properties without the state of New York, and it

was contended that allowance should be made for that in the assessment of the shares for the purposes of taxation under the transfer tax law. The court held that, notwithstanding the fact that the corporation itself was not taxable upon the property so owned by it, the value of that property should not be excluded in the ascertainment of the value of the shares for taxation under the transfer tax law. The nature of the interest of the holder of those shares is described as being his right to participate in the net earnings of the corporation as a going concern, or in that of its assets upon a dissolution; that the shares represent an interest in the corporate assets and property regarded as a whole.

If, therefore, the Boston & Albany Railroad is to be regarded as a domestic corporation, and the shares held by the nonresident owner at the time of his death are subject to a transfer tax in this state, we think the Palmer Case is plain authority for the proposition that they are taxable as a whole, and that there can be no separation of those shares into fractional parts, assigning so much of their value to property of that corporation within this state, and so much to the property of that corporation outside of the state; for in the same case it is held that the tax imposed under the transfer tax law, as applied to these shares, is not a tax upon property. It is stated in the opinion of the court that the tax imposed by the state upon the transfer of such property (meaning shares of stock of the corporation held by a nonresident), upon the decease of its owner, is not upon the property which passes; it is upon the right of succession to it. "The transfer tax act operates upon that general right to succeed to the interest of the deceased in the corporation, and it is inconceivable that the value of the interest upon which the tax is computed is determinable by the location of the corporate properties."

It is argued that, under the construction above given, the provision of the transfer tax law applicable here would be unconstitutional. It is unnecessary to enlarge upon that subject. The proposition was advanced and relied upon by counsel in the Palmer Case, supra, but the court did not deem it necessary to refer to it in its opinion.

The order appealed from should be affirmed, with costs.

O'BRIEN, P. J., and LAUGHLIN and CLARKE, JJ., concur.

INGRAHAM, J. (dissenting). The deceased being a nonresident, it was only the transfer of his property in this state at the time of his death that was taxable. He was the owner of capital stock of the Boston & Albany Railroad Company. That corporation was formed by the consolidation of two railroad corporations, one in the state of New York, and the other in the state of Massachusetts, authorized by an act of the Legislature of the state of New York (chapter 917, p. 2399, Laws 1869) and an act of the state of Massachusetts. The act of 1869 authorized a railroad corporation organized under the laws of this state to consolidate with railroad corporations organized under the laws of other states for the purpose of operating railroads or bridges, either wholly within or partly within and partly without the state, and enacted that, upon the consummation of said consolidation, all the rights, privileges, ex-

emptions, and franchises of each of the said corporations shall be deemed to have been transferred to and vested in the new corporation. A similar act was passed by the state of Massachusetts, and, under the authority conferred by these two acts, several railroads consolidated and became the Boston & Albany Railroad Company, and they have operated a railroad from the city of Boston, Mass. to the city of Albany, N. Y. The deceased was a resident of the state of Connecticut, and the only ground upon which he can be said to have any property within this state is the fact that this corporation was by this act created a domestic corporation, and that by the transfer of the stock upon the death of the testator there was a transfer of property within this state. While the new corporation that was created by the consolidation became a domestic corporation, so far as it owned and operated a line of railroads in this state, it was also a foreign corporation, so far as it owned and operated a railroad in the state of Massachusetts. Its right to exist and operate its railroad in Massachusetts depended, not upon the law of this state, but upon the law of the state of Massachusetts, and its property that it owned in that state, it seems to me, it owned as a foreign and not a domestic corporation. It is undoubtedly true that the transfer of the shares of stock was taxable in this state; but I think that, where a corporation owns property in this state under its domestic charter, and owns property in the state of Massachusetts under a Massachusetts charter, a transfer of its stock cannot be said to be a transfer of property in this state, so far as that property is represented by its road and real property in Masachusetts owned and operated under the law of that state. Just how this property shall be apportioned it is not necessary now to decide, but it seems to me to be a gross injustice to require a stockholder in this Massachusetts corporation, not a resident of this state, to pay taxes upon property held and operated under the authority of the Massachusetts charter, over which this state has no control. A stockholder of a domestic corporation is liable to a tax upon the value of his interest in the whole of the corporate property, as evidenced by the number of shares of stock which he holds (Matter of Palmer, 183 N. Y. 238, 76 N. E. 16), as, the stock being that of a domestic corporation, the transferee of the stock must come into this state to transfer the stock and secure his rights in the corporation. But the stock of this corporation is actually transferred in Massachusetts. The owner is not dependent upon the law of this state to secure his rights in the corporation, except so far as it effects the property of the corporation within this state. The courts of this state would have no authority or control over the property of this corporation in the state of Massachusetts, and I do not think that the proportion of the property in the state of Massachusetts is subject to taxation in this state.

I dissent therefore from the affirmance of this order.