In the Matter of the Appraisal for Taxation of the Estate of JOHN F. HOUDAYER, Deceased.

1. TRANSFER TAX ACT — MONEY OF NON-RESIDENT DECEDENT ON DEPOSIT IN THIS STATE IN A TRUST ACCOUNT. Individual deposits of a non-resident decedent, made by him with a trust company in this state, under an account opened by him as trustee and containing deposits of moneys of his trust estate, are subject to taxation under the Transfer Tax Act (Laws of 1892, chap. 399).

2. DEPOSIT OF MONEY IN BANK. A deposit of money in a bank, although technically a debt, is still money for all practical purposes, and as such is taxable under the Transfer Tax Act of 1892.

*Matter of Houdayer*, 3 App. Div. 474, reversed.

(Argued April 21, 1896; decided October 6, 1896.)

APPEAL from order of the Appellate Division of the Supreme Court in the first judicial department, made April 10, 1896, which reversed an order of the surrogate of the county of New York, affirming an appraisal of property under the Transfer Tax Act (Chap. 399, Laws of 1892).

The facts, so far as material, are stated in the opinions.

*Emmet R. Olcott* for the comptroller of the city of New York, appellant. The money on deposit in the trust company was property subject to taxation under the act whether treated as "money" or a "thing in action," a claim by the representatives of decedent against and an obligation of the trust company. (1 R. S. chap. 13, § 1; Laws of 1892, chap. 677; *People* v. *Trustees of Ogdensburgh*, 48 N. Y. 397; *In re Romaine*, 127 N. Y. 88; *In re Morejon*, Sur. Dec. 1891, 307; *In re Bowden*, Sur. Dec. 1891, 115; *In re Simoni*, N. Y. L. J., Jan. 20, 1896; *In re Swift*, 137 N. Y. 77.) The money on deposit in the trust company was not transiently within the state. (*In re Enston*, 113 N. Y. 182; *In re Romaine*, 127 N. Y. 88; *In re Phipps*, 59 N. Y. S. R. 771.)

*J. Culbert Palmer* for administrator, respondent. The law in question imposes a special tax and must be strictly con-

strued against the state. (*In re Enston*, 113 N. Y. 178; *In re James*, 144 N. Y. 6.) The decedent having mingled his own funds with those of the trust estate, his representatives, on his decease, succeeded merely to a right to an action for an accounting; which having been held, or other settlement made, the administrators would still hold merely a chose in action in the nature of a claim against the trust company. (*Chapman* v. *White*, 6 N. Y. 412; *F. Nat. Bank* v. *Clark*, 134 N. Y. 369.) The *situs* of a debt is the domicile of the creditor and not the debtor. (*In re Phipps*, 77 Hun, 325; 143 N. Y. 641; *Guillander* v. *Howell*, 35 N. Y. 662; *People ex rel.* v. *Comrs. of Taxes*, 23 N. Y. 224; *People* v. *Trustees of Ogdensburgh*, 48 N. Y. 397; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *C., etc., R. R. Co.* v. *Pennsylvania*, 15 Wall. 300.) The property in or claim to the deposit as distinguished from the deposit itself was never located within this state, but was actually in the state of New Jersey. Therefore, being the property of a non-resident decedent and situated out of this state, it does not fall within the purview of this act. (*In re James*, 77 Hun, 211; 144 N. Y. 6.) A debt held by a non-resident decedent against a resident of this state is not taxable under this act. (*In re Phipps*, 77 Hun, 325; 143 N. Y. 641; Laws of 1883, chap. 392, § 1; *People ex rel.* v. *Comrs. of Taxes*, 23 N. Y. 228.) Assuming that this claim against the trust company can be regarded as in the nature of property, it is still not taxable, because property transiently within the state is not taxable. (*In re Phipps*, 143 N. Y. 641; *In re Romaine*, 127 N. Y. 83; *In re Enston*, 113 N. Y. 174; *Guillander* v. *Howell*, 35 N. Y. 657; *People ex rel.* v. *Comrs. of Taxes*, 23 N. Y. 224; *In re Tulane*, 51 Hun, 213; *Herron* v. *Kuran*, 59 Ind. 473.)

VANN, J. On the 21st of May, 1895, John F. Houdayer died intestate at Trenton, New Jersey, where he had resided for a number of years. In 1876 he opened an account with the Farmers' Loan and Trust Company, of the city of New York, as trustee under the will of Edward Husson, deceased,

in which he made deposits, from time to time, of moneys belonging to the trust estate, as well as moneys belonging to himself. This continued as an open running account until his death, when the balance on hand was the sum of $73,715, of which $2,000 belonged to him as trustee, and the remainder to himself as an individual. The appraiser deducted $3,500 for the payment of debts and expenses, and included $68,215 in the appraisal, which was affirmed by the surrogate, but reversed by the Supreme Court. The theory upon which that learned court decided the case appears in the following extract from its opinion : " It is well settled that the legal relation which existed between the decedent, as such trustee, and the Farmers' Loan and Trust Company, was that of debtor and creditor. The deposits became the property of the trust company, and thereupon the company became indebted to the depositor for the amount so deposited. Here, however, even this relation existed only between tne decedent in his representative capacity, as trustee under the will of Edward Husson, and the company. Individually he occupied no contract relation toward the company. His individual deposits simply went to swell the trust account. Ordinarily it would have required an accounting in equity to separate the individual from the trust deposits, and to appropriate the general bank balance in accordance with just principles. Here this separation was amicably arranged between the decedent's estate and the trust estate, but this was merely a friendly substitute for an accounting. Precisely what the decedent had individually within this state was the right to an accounting in equity with regard to a debt due from the company to himself as Husson's trustee. We do not think that the debt was property within this state, within the meaning of the Taxable Transfer Act. Much less was the right to an accounting with respect to such debt."

In my judgment, this is sound reasoning upon an unsound basis, because it places form before substance. It enables a large sum of money, invested and left in this state and enjoying the protection of its laws, to escape taxation because the

decedent had voluntarily commingled his own funds with those of an estate he represented, and for the further reason that his rights as against the trust company were intangible. But what were his rights, or those of his successors, as against the state of New York, in view of the command of its legislature that all property, or interest in property, within the state, susceptible of ownership, should be subject to a transfer tax upon the death of its owner whether he was a resident or non-resident? What was the real thing, the essence of the transaction, that gives rise to this controversy? The decedent brought his money into this state, deposited it in a bank here, and left it here until it should suit his convenience to come back and get it. While the commingling of funds may complicate administration, it does not change the facts as thus stated. If he had deposited *in specie*, to be returned *in specie*, there can be no doubt that the money would be property in this state subject to taxation. But, instead, he did as business men generally do, deposited his money in the usual way, knowing that, not the same, but the equivalent, would be returned to him upon demand. While the relation of debtor and creditor technically existed, practically he had his money in the bank and could come and get it when he wanted it. It was an investment in this state subject to attachment by creditors. If not voluntarily repaid, he could compel payment through the courts of this state. The depositary was a resident corporation, and the receiving and retaining of the money were corporate acts in this state. Its repayment would be a corporate act in this state. Every right springing from the deposit was created by the laws of this state. Every act out of which those rights arose was done in this state. In order to enforce those rights, it was necessary for him to come into this state. Conceding that the deposit was a debt; conceding that it was intangible, still it was property in this state for all practical purposes, and in every reasonable sense within the meaning of the Transfer Tax Act. (*In re Romaine*, 127 N. Y. 80, 89.)

While distribution of the fund belongs to the state where

the decedent was domiciled, as such distribution cannot be made until his administrator has come into this state to get the fund, possibly, after resorting to the courts for aid in reducing it to possession, the fund has a *situs* here, because it is subject to our laws. A reasonable test in all cases, as it seems to me, is this : Where the right, whatever it may be, has a money value and can be owned and transferred, but cannot be enforced or converted into money against the will of the person owing the right without coming into this state, it is property within this state for the purposes of a succession tax. Thus the right in question is property, because it is capable of being owned and transferred. It is within this state, because the owner must come here to get it. It is subject to taxation, because it is under the control of our laws. It has a money value, because it is virtually money, or can be converted into money upon demand. It is subject to a transfer tax, because the passing, by gift or inheritance, of "all property, or interest therein, whether within or without this state, over which this state has any jurisdiction for the purposes of taxation," comes within the expressed intention of the legislature.

I regard further discussion as unnecessary, as I have fully expressed my views as to the scope of the statute in the *Bronson* case, decided herewith.

While a majority of my associates concur in the result reached by me, they do not all concur in the reasons given therefor. They are of the opinion that a deposit of money in a bank, although technically a debt, is still money for all practical purposes, and as such is taxable under the Transfer Tax Act.

The order of the Supreme Court should, therefore, be reversed, and the order of the surrogate affirmed, with costs.

GRAY, J. (dissenting). When the deceased made deposits with the trust company, they became the property of the depositary and the relation which sprang up between them

was that of debtor and creditor. The right of the decedent as a depositor was a mere chose in action. More than that, as the account in the trust company was with the decedent as trustee of Husson's will, there was, of course, no clear liability to him individually. The sum owing to him could only be established as the result of an accounting, or by amicable arrangement in lieu thereof. Thus, all that the decedent owned in this state at the time of his decease, to put it in its strongest expression, was the right to an equitable accounting with respect to the debt due to him as Husson's trustee. To say that that constituted " property," within the meaning of the act, would be to carry the doctrine of the inheritance tax laws too far for support in law or in reason.

I think the order appealed from should be affirmed, with costs.

O'BRIEN, J., concurs with VANN, J.; ANDREWS, Ch. J., BARTLETT and MARTIN, JJ., concur in result of opinion of VANN, J.; HAIGHT, J., concurs with GRAY, J.

Ordered accordingly.