**1. TAXATION—TRANSFER TAX—TAXATION OF NONRESIDENTS.**

All bonds, money, and stocks of domestic corporations and real estate actually in the state, and passing as part of a nonresident's estate, are subject to taxation under the transfer tax act.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 1682.]

**2. SAME—DEDUCTIONS—DEBTS.**

In ascertaining the amount and value of property which passes as part of the estate of a nonresident, and to which the transfer tax attaches, all indebtedness to persons in the state may be deducted.

**3. SAME.**

A nonresident was on the day of his death indebted to brokers in the state for stocks, etc., purchased by them for him with their own money, the debt being secured by a pledge of taxable and nontaxable securities. The executrix, on the day following such death, directed the brokers to close out the account in the following manner: (1) By a sale of taxable securities actually purchased for the account. (2) By a sale of taxable securities owned by deceased, and pledged by him as additional collateral. (3) By the sale of nontaxable securities actually purchased by the brokers for the account, and which amounted in the aggregate to more than enough to satisfy the debt in full. *Held*, that the debt to the brokers would be considered as paid by the application of the pledged collateral, and real estate and unpledged personal property of the decedent situated within the state would be taxed under the transfer tax act, and could not be offset against the debt due the brokers.

In the matter of the estate of Joseph W. Burden. From an order determining that the estate is not subject to a transfer tax, the comptroller appeals. Reversed.

Jarvis P. O'Brien and George B. Wellington, for the State Comptroller, appellant.

Henry J. Speck, for executrix, Harriet H. Burden, respondent.

HEATON, S. This is an appeal from an order determining that the estate of Joseph W. Burden, deceased, was not subject to a trans-

fer tax. On this appeal additional facts have been presented, which were not presented to the appraiser; the parties in this proceeding having stipulated as to all the facts. Joseph W. Burden at the time of his death was a nonresident of the state of New York. He had a speculative stock account with brokers in the city of New York, and on the day of his death owed said brokers $248,328.42 for stocks and bonds purchased by them for him with their own money, which were of the value on that day of $184,780. Of such collateral $28,255 was the value of the bonds and $156,525 was the value of stocks of foreign corporations. As additional collateral to such account, said brokers held bonds of the value of $71,250.50 and stocks of foreign corporations of the value of $24,987.50. The deceased also had 25 shares of New York Central stock pledged to said brokers, as bankers, for a loan of $5,510; said stock on the day of his death being worth $25,450. The deceased also had $300 in the bank, and an equity in real estate, situated in New York City and Troy, of the aggregate value of $19,000. The question to be considered here is whether or not real estate and unpledged personal property can be offset in this proceeding against the debt held by the brokers against the deceased, and secured by the pledge of taxable and nontaxable securities, so that the order determining that the deceased left no taxable property in the state of New York can be affirmed. It has been settled in this state that all bonds, money, and stocks of domestic corporations and real estate actually in the state, and passing as part of the estate of a nonresident, are subject to taxation under the Transfer Tax Act. Matter of Houdayer, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. Rep. 642; Matter of James, 146 N. Y. 79, 40 N. E. 876, 48 Am. St. Rep. 774. In ascertaining the amount and value of property which passes and to which the tax attaches, all indebtedness to persons in the state of New York may be deducted. Matter of Westurn, 152 N. Y. 93, 46 N. E. 315.

It is claimed by the executrix that the taxable property of the deceased in the state of New York was as follows: Pledged bonds, $99,505, and equity in pledged New York Central stock $19,940, cash in bank $300, and equity in real estate $19,000—a total of $138,745; that the debts of the deceased in the state of New York amount to more than $28,000, and that there is therefore no property in the state of New York liable to taxation. In making this claim the executrix disregards the fact that there were pledged to the brokers, as collateral security for the payment of this debt, stocks of foreign corporations of the agreed value of $181,512.50, and that if such stocks so pledged were applied with the taxable stocks so pledged to the payment of the stockbrokers' debt, such debt would be paid, and there would be a small balance in the hands of the brokers to the credit of the deceased. The executrix has stipulated in this proceeding as follows:

"In closing out the speculative or stock account on the day following Mr. Burden's death, the executrix directed the brokers to close out said account in the following manner: First. By a sale of the taxable securities actually purchased by the brokers for said account, and which amounted in the aggregate to $28,255. Second. By the sale of the taxable securities owned by Mr. Burden, and pledged by him as additional collateral for said stock account, and which amounted in the aggregate to $71,250. Third. By the sale

of the nontaxable securities actually purchased by said brokers for said speculative account, and which amounted in the aggregate to $156,525, or more than enough to satisfy the debt in full."

Under this stipulation, then, the debt to the brokers must be considered as paid by the application of the pledged collateral, and there remains no debt against which to offset the otherwise clearly taxable real estate, money in bank, and the equity in the New York Central stock, except some floating indebtedness of about $2,500 and administration expenses.

. The deceased was under contract with the brokers to apply the pledged securities to the payment of the debt, and the executrix performed that contract. He also had an option to pay the debt and take his securities, but of that option the executrix did not avail herself. She argues that, having paid a portion of the debt with pledged nontaxable securities, which are not under the Transfer Tax Law considered as "property" in this state, she has a right to treat such portion of the debt as still existing for the purpose of offsetting against it property otherwise taxable. Having paid part of the debt with those securities which were "property," and the balance thereof with those securities which were not "property," in this state, and having received for the general purposes of the estate, as part of the property passing by the will of the deceased, the equity in the New York Central stock, the equity in the real estate, and the cash in bank, such property, less some unsecured debts, commissions, and expenses of administration, if any shall be allowed in the state of New York, is subject to tax. The executrix cannot now successfully argue that the balance of the debt, after applying the taxable property pledged, which has actually been paid with nontaxable securities pledged for that purpose, should be carried as a debt to create an offset against clearly taxable property. Neither can she claim that, in determining whether or not there is any debt to be offset against "property," we cannot consider the nontaxable property. While for the purposes of taxation that class of property is not treated as taxable "property," yet it was part of the estate of the deceased, which passed to the executrix, and she chose to cause its sale and application to the debt of the deceased.

The comptroller relies upon the Pullman Case, 46 App. Div. 574, 62 N. Y. Supp. 395, as being an authority directly in point, and as being a complete answer to the argument of the executrix. In that case Mr. Pullman was a resident of Chicago, where his will was proved. He left a large estate. He owed brokers in the state of New York a debt of more than $800,000, and as collateral to such debt the brokers held bonds and stocks of New York corporations of the value of $58,430, and also stocks of foreign corporations of more value than the amount of the whole debt. In addition thereto, Mr. Pullman had in the state of New York bonds, taxable stocks, cash, and other real and personal property of the value of more than $774,000. It was sought in that case to set off against the $774,000 of taxable property the whole debt of over $800,000, and the claim was made that he had no taxable property. The claim of the executors was not sustained, except as to the amount of the pledged taxable property of $58,430, and in that case the court announced this principle:

"That where domestic creditors have in their hands the legal title and the right to resort for the payment of their debts to securities belonging to a nonresident decedent, which are not taxable under the laws of this state, indebtedness due such creditors is not to be offset against the value of property of such decedent otherwise taxable under the Transfer Tax Law of this state."

This decision would seem to govern the case under consideration, except that it appears in the Pullman Case that at the time of the appraisal the account had not been closed out, while in this case it is expressly stipulated that the account was closed out on the day after the death of Mr. Burden. But the executrix in this case has done just what the court in the Pullman Case reasoned that the parties would have done in that case had the account been closed out before the appraisal, viz., paid the debt with the pledged property, leaving unpledged property liable to taxation. It would therefore seem that the decision here must be governed by the decision in the Pullman Case.

Let this matter go back to the appraiser, to appraise and assess the taxable property in accordance with the stipulation of the parties and the views herein expressed.