## In re GORDON'S ESTATE.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

TAXATION—TRANSFER TAX—PROCEEDS OF INSURANCE POLICY.

Where a domestic corporation issued a policy of life insurance to a resident of another state, in which state the corporation had designated a person on whom process might be served, and the policy was never in this state, its proceeds, paid to a foreign executor of the insured, are not property within the state, subject to a transfer tax.

O'Brien, P. J., and Clarke, J., dissenting.

Appeal from Order of Surrogate, New York County.

In the matter of the transfer tax on the estate of Leonard J. Gordon, deceased. From an order confirming the report of appraisers appraising the estate subject to taxation, William E. Gordon, executor, appeals. Reversed, and order fixing the transfer tax modified.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Daniel Burke and Burke & Fay, for appellant.
Jabish Holmes (Alfred Yankauer, on the brief), for respondent.

INGRAHAM, J. Leonard J. Gordon was a resident of the state of New Jersey, and died there on the 17th day of January, 1905, leaving a last will and testament, which was admitted to probate in that state, and letters testamentary upon his estate were issued to William E. Gordon, who was also a resident of the state of New Jersey. The decedent died seised of no real property in this state, but left certain personal property here, the value of which was appraised in this proceeding. At the time of his death the testator had a policy of life insurance in the Equitable Life Assurance Society, a domestic corporation. This policy was dated June 13, 1889, and by it:

"The Equitable Society does promise to pay to Leonard J. Gordon, his executors, administrators, or assigns, the sum of five thousand dollars, (any indebtedness to this society on account of this contract to be first deducted therefrom) at the office of the society in the city of New York, within sixty days after satisfactory proofs of the death of the said Leonard J. Gordon, of Jersey City, in the county of Hudson, state of New Jersey, shall have been furnished to the society at its said office."

The testator paid the premiums on this policy, and it was in force at the time of his death, and on the 30th day of January, 1905, the insurance company paid the policy by a check of the insurance company drawn to the order of William E. Gordon, as executor of the estate of Leonard J. Gordon, deceased, on the Equitable Trust Company in the city of New York. There was no evidence as to where or how this check was delivered to the foreign executor. Upon the death of an assured the proof of death may be received at an agency of the society when they are transmitted to the home office in the city of New York, and when received there a check is issued in payment of the amount due. All premiums are regarded by the company as paid as soon as received at one of its agencies. It further appeared that this policy of insurance was not at any time in the state of New York after it was issued; that at the

time of the death of the testator it was deposited in a safe deposit box in the state of New Jersey, and had been so deposited for more than five years prior to his death; that the contract of insurance was actually made in the state of New Jersey and the premiums paid there; that since the passage of the insurance law of the state of New Jersey in the year 1902 the Equitable Life Assurance Society has designated the commissioner of banks and insurance of New Jersey as the person upon whom process could be served in that state, and that since the issuance of the policy in question it has had real property in the state of New Jersey of the value of $5,000 or more. This state imposes a tax on the transfer of property by will or the intestate law "when the transfer is by will or intestate law of property within the state, and the decedent was a nonresident of the state at the time of his death. In Matter of Knoedler, 140 N. Y. 377, 35 N. E. 601, it was held that a policy of life insurance issued by a domestic corporation upon the life of a resident of this state was property and assets of the decedent's estate at the time of his death, and subject to a transfer tax. The court said:

"The burden of the appellants' effort seems to be to establish that these policies were not property of which the testator was seised and possessed at the time of his death. But it must be admitted that they were obligations to pay money at a future date, and every instrument duly executed and having a lawful consideration, which secures to the holder the payment of money at a specified time, confers upon him a right of property. The statute has declared what shall be deemed assets of the estate of a deceased person, and subject to distribution by his executors or administrators, and includes among all them all choses in action and every other species of personal property and effects. It is plain that these policies were assets of the estate. The collateral inheritance law is very broad in its provisions. All property which the decedent owned when he died and which has an appraisable value is to be included, subject, of course, to the payment of debts, and to pay such exceptions as are specifically mentioned, but which have no application here. If these policies were not assets, then the appellants derived no title to their proceeds under the will, and they cannot make title through any other source. It is only such property that the testator died seised and possessed of and its increase that they can claim as his legatees."

This decision is thus put upon the ground that the policies, being the obligation of solvent debtors, were property which passed to the personal representatives, and through them to the legatees under the will. In this case the deceased was a nonresident, and the comptroller is not only required to establish that this policy of insurance was property, and passed by the will of the testator under the law of the state of New Jersey, but that what passed to the executors or legatees was property within this state at the time of his death. I conceive that the question here is not what the state had power to do by reason of its control over the corporation that was the debtor, but what it has done when it imposes a tax upon property within this state; and whether the state, as a fact, has by this provision of the statute taken the money that was due to the estate of this nonresident, and appropriated a portion of that money under the guise of taxation, when neither the creditor who was entitled to the money nor the obligation under which it was payable was actually within this state at the time of the transfer. The money or property was not in the custody of the Surrogate's Court, so that the person entitled to it would have to come to this state to receive it from an ex-

ecutor or administrator appointed by the law of this state, as was the case in Matter of Clinch's Estate, 180 N. Y. 300, 73 N. E. 35. Here the money realized by the estate, and which the executor distributed as directed in the will, never was property of the estate in this state. It never became property of the estate until the debtor had delivered it to the foreign administrator, and it was then money in the state of New Jersey, and under the control of the laws of that state. The Court of Appeals in Matter of Houdayer's Estate, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. Rep. 642, held that money on deposit in a trust company in the city of New York standing to the credit of a nonresident was properly within this state subject to taxation. In that case Judge Vann, in speaking of such a deposit, says:

"While the relation of debtor and creditor technically existed, practically he had his money in the bank, and could come and get it when he wanted it. It was an investment in this state, subject to attachment by creditors. If not voluntarily repaid, he could compel payment through the courts of this state. The depositary was a resident corporation, and the receiving and retaining of the money were corporate acts in this state. Its repayment would be a corporate act in this state. Every right springing from the deposit was created by the laws of this state. Every act out of which those rights arose was done in this state. In order to enforce those rights, it was necessary for him to come into this state. Conceding that the deposit was a debt, conceding that it was intangible, still it was property in this state for all practical purposes, and in every reasonable sense within the meaning of the transfer tax act. While distribution of the fund belongs to the state where the decedent was domiciled, as such distribution cannot be made until his administrator has come into this state to get the fund, possibly, after resorting to the courts for aid in reducing it to possession, the fund has a situs here, because it is subject to our laws. A reasonable test in all cases, as it seems to me, is this: Where the right, whatever it may be, has a money value, and can be owned and transferred, but cannot be enforced or converted into money against the will of the person owning the right without coming into this state, it is property within this state for the purposes of a succession tax. Thus, the right in question is property, because it is capable of being owned and transferred. It is within this state, because the owner must come here to get it. It is subject to taxation, because it is under the control of our laws. It has a money value, because it is virtually money, or can be converted into money upon demand. It is subject to a transfer tax, because the passing, by gift or inheritance, of 'any property, or interest therein, whether within or without this state, over which this state has any jurisdiction for the purposes of taxation,' comes within the expressed intention of the Legislature."

And in Matter of Clinch's Estate, 180 N. Y. 300, 73 N. E. 35, it was said:

"In Matter of Blackstone's Estate, 171 N. Y. 682, 64 N. E. 1118, we followed the decision in the Houdayer Case, and again taxed the deposit of a nonresident in a New York Trust Company. The case was appealed to the Supreme Court of the United States, and our decision affirmed. Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439. The Supreme Court took the same broad ground held by Judge Vann in this court. It said that the doctrine that the situs of personal property was the domicile of the owner was merely a fiction which must yield to facts; that it was the law of the place where the debtor resided which gave the debt validity and forced the debtor to pay, and that it was within the constitutional power of the state where the debtor resided to tax the obligation from him to a nonresident; excepting, however, the case of bonds and negotiable instruments, which are considered to be not merely evidence of the debt, but inseparable from the debt itself."

Two reasons which were stated by Judge Vann to justify the conclusion that a deposit in a trust company was property within this state, except the fact that the insurance company was a domestic corporation, are not presented in this case. Here the obligation, which was an absolute obligation to pay a sum of money to a payee or his personal representatives, was not within this state. The contract was not made in this state. Under the law of the state of New Jersey, where the testator resided the personal representatives of the insured could collect the amount due on the policy without coming into this state. The insurance company had become so far a resident of that state as to have obtained from that state authority under its laws to do business there, had designated a state official upon whom process could be served, and had within that state property more than sufficient to satisfy the judgment. The obligation did not pass, under the laws of this state, to the executor or personal representative of the decedent. Under the contract itself, it was never payable to the deceased, nor could he ever have collected it. It was payable upon his death to his personal representatives or assigns. This policy of the right to receive the money after the death of the insured could have been assigned during his life, because the contract was that the money should be paid to his personal representatives or assigns; but the right to receive and the obligation to pay this money did not arise until the death of the insured, when there arose, in pursuance of a contract which the company had made with him, an obligation to pay to his personal representatives a sum of money after his death. It is quite true that the sum of money when received by his executor passed under the will of the testator, and it was by the personal representatives of the testator to be distributed as therein provided. But it seems to me that what passed under the will and what was transferable was the money which was received by the personal representatives of the deceased, and that money never became property of the estate until it was paid to the foreign executor in the discharge of the obligation which the insurance company had entered into. Suppose the insurance company had refused payment, and the executor had sued in the state of New Jersey by serving process there upon the person designated by the insurance company, and had obtained a judgment there, and had satisfied that judgment out of the property of the insurance company in that state, and then had distributed the money thus received among the beneficiaries named in the will, could it have been said in any sense that anything that passed by the will of the testator was in this state at the time of his decease, and passed by virtue of the laws of this state? The fact that the insurance company voluntarily paid its debt, instead of compelling this New Jersey creditor to proceed to enforce it in New Jersey, cannot substantially change the situs of the property, which was transferred by the will of the testator, and over which the courts of this state had no jurisdiction.

I think, therefore, that the order appealed from should be reversed, and the order fixing the transfer tax modified by deducting from the taxable property the amount realized upon this policy of insurance, with $10 costs and disbursements to the appellant.

McLAUGHLIN, J., concurs.

HOUGHTON, J. (concurring). I concur in the opinion of Mr. Justice INGRAHAM, concluding that the proceeds of the policy in suit, issued by a domestic life insurance company to a nonresident policy holder, and payable on his death to his estate, are not taxable under the transfer tax act. Assuming that the amount stipulated by the policy is a debt becoming due and payable in this state to the estate of a foreign policy holder on his death, I do not understand that the courts of this state have yet decided that such a debt comes within the provisions of that act. Bonds of a domestic corporation owned by a nonresident decedent, and not in this state at the time of his death, although debts of a resident due to a nonresident, have been distinctly held not subject to taxation. Matter of Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632. By the same case shares of stock in such a corporation, held in the same manner, were decided to be subject to taxation, because the stockholder owned a distinct interest in the corporate property situated in this state. Deposits of money by a nonresident in a domestic bank or trust company, or with individual bankers or brokers, have been held taxable on the ground that such deposits are money; and although the relation between the depositor and the bank was technically that of creditor and debtor, still, for the purposes of taxation under the act, it could be and should be treated as money, and hence property within the state, and not a debt due. Matter of Houdayer's Estate, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. Rep. 642; Matter of Blackstone's Estate, 69 App. Div. 127, 74 N. Y. Supp. 508; affirmed 171 N. Y. 682, 64 N. E. 1118, and affirmed by the Supreme Court of the United States, sub nomine, Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439; Matter of Daly's Estate, 100 App. Div. 373, 91 N. Y. Supp. 858, affirmed 182 N. Y. 524, 74 N. E. 1116; Matter of Hewitt's Estate, 181 N. Y. 547, 74 N. E. 1118. In Matter of Houdayer, supra, two of the judges dissented from the prevailing opinion, and the decision of the majority of the court was expressly stated to be put upon the ground that the deposit in the bank retained its character of money for the purposes of taxation, and such was the actual ground of decision of all of the cases above cited. It is true that in Blackstone v. Miller, supra, the power to tax is discussed by the federal Supreme Court upon the broad ground that the depositary was a debtor residing within the state of New York, and that the creditor was subject to its laws with respect to enforcing the obligation due him. It was not, however, necessary to put the decision upon this ground, for in that case both amounts of money sought to be taxed had been deposited—the larger amount with a trust company, and the smaller amount with individual bankers. In Matter of Clinch's Estate, 180 N. Y. 300, 73 N. E. 35, this decision is commented upon, but I do not understand our Court of Appeals to have adopted that decision in its entirety. Until compelled to do so by an unequivocal holding of that court to that effect, I am not disposed to subscribe to the doctrine that a simple debt due from a resident debtor to a nonresident creditor, although payable in this state, the evidence of which is not within this state at the time of the creditor's decease, is taxable under the transfer tax act. The facts in the Clinch Case required no such

holding, for the will under the legacy passed, was admitted to probate in this state, and the legacy was finally paid in this state from funds located here to the executors of the deceased legatee, whose will was also admitted to probate here. All the property, therefore, which was transferred was within this state at the decease of the legatee.

It may also well be said that it was not within the intent of the Legislature to tax moneys to become due from domestic life insurance companies to the estates of foreign policy holders. A very large proportion of the great life insurance companies of the country have their domicile in this state. Their proper management and prosperity is a matter of public and legislative concern. Insurance of one's life for the benefit of one's family or estate has been supposed to be a guard against indigence and want, and a form of thrift to be encouraged. Many policies are written, for financial and other reasons, payable to the representatives of the estate of the insured, who intends that the avails of his policy shall be paid to his widow and children as though payable directly to them. If the proceeds of such a policy are to be taxed in this state on his death, would-be policy holders in other states might be deterred from insuring at all with companies located here. The Legislature could hardly have intended to enact a law detrimental to our own companies in the prosecution of their legitimate business. If the proceeds of such a policy are taxable, it logically follows that a mere commercial debt due from a resident buyer to a nonresident seller, who may die before it shall be paid, is also taxable. I do not think it follows because the proceeds of a policy payable to the estate of a resident policy holder are taxable, that the debt due the estate of a nonresident policy holder is also taxable. In the case of the resident policy holder his estate is swelled by the amount of the policy, and is administered and distributed in its enlarged form as though the money had been acquired from any other source. With respect to the nonresident policy holder, the administration and distribution is in another form, after the claim held by the estate shall have been collected.

For these reasons, as well as those advanced in the prevailing opinion, I concur in the reversal and modification of the decree of the surrogate.

CLARKE, J. (dissenting). This is an appeal by the executor and certain beneficiaries under the will of Leonard J. Gordon from an order of the surrogate assessing a transfer tax herein. The sole question presented is whether the obligation of a New York life insurance company under its policy, payable to a nonresident or his legal representatives or assigns, is property taxable within the meaning of the transfer tax law, and subjects the estate to a tax although the policy is not within the state. Leonard J. Gordon, a resident of Jersey City, N. J., died on the 17th day of January, 1905, leaving a will by which his estate was to be divided among a number of beneficiaries, the nearest being brothers and sisters. He left certain property within the state of New York conceded to be taxable. Among his assets was a life insurance policy for the sum of $5,000, issued to him by the Equitable Life Assurance Society, a New York stock corporation, organized under

the laws of 1853, and having its principal office in the city and state of New York. The policy was issued to Gordon June 13, 1889, and was in New Jersey at his death. It was issued from the home office, where all policies are issued, and the society's policies provide that all premiums are payable in New York. The policy provided as follows:

"The Equitable Society does promise to pay to Leonard J. Gordon, his executors, administrators, or assigns, the sum of five thousand dollars (any indebtedness to the society on account of this contract to be first deducted therefrom, at the office of the society in the city of New York, within sixty days after satisfactory proofs of the death of the said Leonard J. Gordon, of Jersey City, in the county of Hudson, state of New Jersey, shall have been furnished to the society at its said office."

The assistant registrar of the society testified that:

"Proofs of death in this case were presented to the company at its home office, 120 Broadway, New York City, and that all domestic claims are presented there and paid there. They have to be filed here at the home office. All policies are paid at the home office; that is our invariable custom. There are no death claims paid by any agency, outside the home office in New York City, in the United States."

The policy was paid by a check of the insurance society drawn to the order of William E. Gordon, as the executor of the estate of Leonard J. Gordon, on the Equitable Trust Company of New York. It appears that since the passage by the state of New Jersey of the insurance law of 1902, the Equitable Life Assurance Society has designated the commissioner of banks and insurance for New Jersey as a person upon whom process against it could be served in that state, and since the issuing of the policy in question it had real estate in New Jersey of at least $5,000 in value, and had a certificate which would authorize the society to do business in that state. The statute does not require the society to have a deposit in the state of New Jersey for the security of policies issued to residents of that state, and the proofs do not show that the society had any deposit in that state. The appraiser held that the obligations of the insurance company, evidenced by the policy to pay the $5,000, were part of the assets or property of a nonresident within this state, and therefore taxable, and the surrogate confirmed this report and the tax assessed upon the property. Subdivision 2, § 220, c. 908, p. 869, Laws 1896, imposes a tax "when the transfer is by will or intestate, law of property within the state, and the decedent was a nonresident of the state at the time of his death." Section 242 of said act, as amended by chapter 88, p. 177, Laws 1898, provides that the words "estate" and "property" as used in this act shall be taken to mean the property or interest therein of the testator, " * * * passing or transferred * * * and shall include all property or interest therein, whether situated within or without this state."

The obligation of the insurance company is property, and part of the assets of the estate. Matter of Knoedler's Estate, 140 N. Y. 377, 35 N. E. 601, was a case which involved the assessment of the value of policies payable to the testator, his executors, administrators, and assigns, of a resident of New York. In answer to the contention

that these policies were not property of which the testator was seised or possessed at the time of his death the court said that:

"They were obligations to pay money at a future date, and every instrument duly executed, and having a lawful consideration, which secures to the holder the payment of money at a specified time, confers upon him a right of property. The statute has declared what shall be deemed assets of the estate of a deceased person, and subject to distribution by his executors or administrators (Rev. St. [8th Ed.] p. 2556, pt. 2, c. 6, tit. 3, § 6), and includes among them all choses in action and 'every other species of personal property and effects.' It is plain that these policies were assets of the estate. * * * The taxable transfer law * * * proceeds upon a new theory of the right of the government to tax, and establishs a new system of taxation. It taxes the right of succession to property, and measures the tax in the methods specifically prescribed. All property having an appraisable value must be considered whether it is such as might be taxed under the general law or not. * * * It is therefore immaterial whether life insurance policies can be called an asset for taxation under the general law"—

And sustained the assessment and the tax.

A policy of life insurance is merely a contract, and like every other contract to pay money is a chose in action, with all the ordinary incidents of every other chose in action, and the relation between the insurance company and the assured is that of debtor and creditor. Olmsted v. Keyes, 85 N. Y. 593. The policy being merely written evidence of indebtedness due from a resident debtor to a nonresident creditor, it would seem that the authorities support the proposition that it is property in this state. The jurisdiction of the state over the debtor gives jurisdiction for the purposes of taxation.

The Supreme Court of the United States, in Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439, said that the doctrine that the situs of personal property was the domicile of the owner was merely a fiction that must yield to fact; that it was the law of the place where the debtor resided which gave the debt validity and forced the debtor to pay, and that it was within the constitutional power of the state wherein the debtor resided to tax the obligation from him to a nonresident. The doctrine of this case has been accepted by the Court of Appeals in Matter of Clinch's Estate, 180 N. Y. 300, 73 N. E. 35, where Judge Haight, referring to the above decision, said:

"This decision was but the logical result of an earlier determination of the court in Chicago, Rock Island & P. R. Co. v. Sturn, 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144, where it was held that a debt due from a resident to a nonresident could be seized by a creditor of the latter in the domicile of the debtor"—

And sustained a transfer tax upon the interest in the estate of a nonresident decedent, whose will had been admitted to probate in New York county, where one of the executors resided.

The cases were thoroughly examined in the opinion of Mr. Justice Hatch in the Matter of Daly's Estate, 100 App. Div. 373, 91 N. Y. Supp. 858, affirmed in 182 N. Y. 524, 74 N. E. 1116, where it was held that debts due from solvent debtors within the state of New York to a nonresident creditor, which are actually converted into money in this state, constituted property within the state of New York, within the meaning of the transfer tax law; and in the Matter of Hewitt's Estate.

181 N. Y. 547, 74 N. E. 1118, the Court of Appeals affirmed a decision
of the surrogate holding that certificates of deposit issued by a New
York bank were taxable when owned by a nonresident decedent, and
when such certificates were at the time of decedent's death without the
state.

In the Hewitt Case the certificate acknowledged receipt of a given
sum "upon which the said company will allow interest at the annual rate
of three per· cent. from this date, and on demand will repay the like
amount in current funds, with interest to the said Abram S. Hewitt or
his assigns, on the return of this certificate, which is assignable only on
the books of the company." The appellant in that case strenuously
urged that said certificates came within the exception stated by Mr.
Justice Holmes in the Blackstone Case, supra, of "bonds and negotiable
instruments, which are considered to be not merely evidence of the debt,
but inseparable from the debt itself." The brief submitted contained this
statement:

"A certificate of deposit is a written instrument for the payment of money
only. It is as concrete a chose in action, the debt which is embodied in it is
as inseparable from it, it is as completely property in itself as much the
subject of larceny. conversion, attachment, and replevin, and it is as fully
and exclusively subject to taxation by the jurisdiction which contains it, as
was the case with the contracts for the payment of. the purchase price of
lands in People v. Ogdensburgh, 48 N. Y. 390, the corporate bonds in State
Tax v. Foreign Held Bonds, 15 Wall. (U. S.) 300, 21 L. Ed. 179, Matter of
Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep.
632, and Matter of Whiting's Estate, 2 App. Div. 590, 38 N. Y. Supp. 131, af-
firmed 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. Rep. 640, and the
individual notes or bonds and mortgages in People v. Smith, 88 N. Y. 576, New
Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110,44 L. Ed. 174, and Matter
of Preston's Estate, 75 App. Div. 250, 78 N. Y. Supp. 91. The certificates of de-
posit here have no feature which was not present in one or other of the securi-
ties before the courts in those cases."

The learned surrogate, however, said (N. Y. Law J., June 18, 1904) :

"The certificates of trust companies evidenced deposits of money and not
loans. They were not negotiable instruments, for they were not payable to
the order of the depositor, and it was expressly stipulated that they were
assignable only on the books of the company. In this respect they differ from
the documents passed upon in all of the cases cited by the appellant in which
the language of the papers in question appear."

And the decision of the surrogate was affirmed in this court (98 App.
Div. 624, 90 N. Y. Supp. 1100) and in the Court of Appeals (181 N.
Y. 547, 74 N. E. 1118).

If these certificates of deposit, carrying interest, payable to the de-
positor or his assigns, and not assignable except upon the books of the
company, do not come within the exception noted of bonds and negoti-
able instruments, it would seem that policies of insurance could not.
To hold that such an obligation comes under the doctrine of negotiable
instruments would do violence to established principles.

It seems to me that the above decisions are conclusive upon this
court. The debtor, the insurance company, was a New York corpora-
tion, having its main office in this city. Here it issued its policies, here
it received the premiums thereon, and kept invested and used the same,
and it was upon the consideration of the receipt and use of those prem-

iums that it made its promise to pay upon the given event the amount agreed upon at its main office here. The company existed by virtue of the laws of this state, and its rights, obligations, and duties were fixed thereby, and if, as we have seen is the case, the amount due on a policy to a resident is a part of the property or assets of the estate of that resident decedent, and taxable under the transfer tax law, it follows that the debt due the estate of a nonresident decedent policy holder is likewise taxable, because the debt is property within the state.

The order, therefore, should be affirmed, with costs to the respondents.

O'BRIEN, P. J., concurs.