In the Matter of the Transfer Tax upon the Estate of SHEFFIELD PHELPS, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; WILLIAM M. JOHNSON and CLAUDIA LEA PHELPS, as Executors and Trustees, etc., of SHEFFIELD PHELPS, Deceased, Respondents.

First Department, December 31, 1917.

Tax — foreign bank stock owned by deceased non-resident — agreement of foreign legatees for private settlement of estate — when such agreement continues executors and trustees in their representative capacity — when shares of stock which will go to deceased non-resident legatee not taxable in this State.

Where the legatees of a testator who died a resident of a foreign State, who are themselves non-residents, entered into an agreement with the executors and testamentary trustees wherein it was recited in substance

that a private settlement of the estate was preferred to a judicial settlement thereof, and that the executors and trustees should set aside securities to pay annuities " in accordance with the terms of said will," and should form the trust estate thereby created and should convert the assets of the estate into money or otherwise manage the same so that ultimately a division could be made among the residuary legatees as the condition of the estate would warrant, and that the trustees who held sundry securities of a character which might not be approved by the court or authorized by law as investments, might retain such securities as in their judgment they might deem for the interest of the estate and to invest or reinvest the proceeds of such securities and should not be liable for any loss or depreciation which might occur unless from their fraudulent misconduct or default, etc., and the trustees, holding stock of a national bank in this State upon which they paid a transfer tax, sold the same and subsequently bought similar stock of the same bank which they held as assets of the estate, the proportionate share of the value of said stock or the amount thereof which might be distributed to one of the residuary legatees is not subject to a transfer tax in this State on the death of said non-resident legatee. This, because under the agreement the executors and trustees continued to hold the estate as representatives of the testator and not as agents of the legatees, and the share of said stock which would go to the legatee was a mere chose in action in favor of one non-resident against another and is not taxable in this State.

Said stock is not subject to taxation although the executors of the testator now propose to make a distribution among the legatees in specie.instead of selling the stock and distributing the proceeds.

PAGE, J., dissented, with opinion.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 23d day of May, 1917, declaring the interest of Sheffield Phelps in certain shares of the stock of a national bank to be exempt from taxation under the laws relating to taxable transfers of property.

*John B. Gleason* of counsel [*Schuyler C. Carlton* with him on the brief], *Lafayette B. Gleason,* attorney, for the appellant.

*Henry W. Jessup,* for the respondents.

SCOTT, J.:

Sheffield Phelps, who died in December, 1902, was the son and a residuary legatee under the will of William Walter Phelps who died in the year 1894. Both William Walter

Phelps and Sheffield Phelps were at the dates of their respective deaths residents of the State of New Jersey. William Walter Phelps died possessed of certain personal property in the State of New York, including 350 shares of the capital stock of the National City Bank, and on July 24, 1901, an agreement was arrived at between his executors and the State of New York whereby the taxable value of his personal property within this State and the amount of tax payable thereon was fixed, and the tax was subsequently paid.

Under the will of William Walter Phelps, John J. Phelps, William E. Bond and Thomas R. White, Jr., were appointed executors and trustees of his estate, and Sheffield Phelps and others were named as residuary legatees. The will was duly admitted to probate, but on July 18, 1894, an agreement was entered into between said executors and said legatees which recited that the parties deemed it "undesirable and inexpedient to have an inventory of said estate filed or the account of said executors and trustees presented to the Orphans' Court for allowance and settlement, but prefer to have a private accounting and settlement made of the affairs of said estate." The agreement then provided that the executors should prepare and file in their own office, but not in the surrogate's office, an inventory of the estate, and should keep proper books of account, but were not to present any account in the Orphans' Court unless three of the legatees, or their legal representatives, should require an account so to be filed. The agreement then proceeded as follows:

"*Fifth.* The said parties of the second part shall proceed with the administration of the said estate and the discharge of their duties as such executors and trustees, by payment of all debts, expenses and legacies; and shall in accordance with the terms of said will set aside the securities required for the annuities mentioned therein; and shall also form the trust estates thereby created; and shall retain and set aside sufficient securities of said estate wherewith to keep up the administration and care of the Teaneck estate as directed in said will, and to pay the taxes, assessments and other expenses incident to the ownership and management of the other real estate belonging to said testator, and shall also set aside and reserve sufficient funds to provide for the

payment of any contingent liabilities or other possible obligations of said estate and the cost of administration thereof; and shall proceed to convert the other assets of said estate into money, or otherwise manage the same, so that ultimately a division can be made amongst the residuary legatees; and from time to time, as the condition of said estate will warrant, will make a partial distribution of said personal estate amongst the parties entitled thereto; and in case any of said reserved funds or securities shall not be further required for the purpose for which they are reserved, then will divide and distribute the same in like manner.

" *Sixth.* The said parties of the first part further agree and direct that the several annuities, payable by the terms of said will, and the interest and income of the trust funds to be formed respectively for the testator's daughter Marian and for his son Sheffield, shall begin to accrue and run from the date of the testator's death, and said parties of the second part may advance from time to time such sums on account of such income as they may deem advisable, to be charged against the interest, payable out of said trust funds when the same shall be formed.

" *Seventh.* And whereas the assets of said estate consist in part of sundry stocks, bonds or other securities of a character which might not be approved by the Court or be authorized by law as proper investments by executors or trustees, but which cannot be disposed of without sacrifice or disadvantage to said estate and it may become desirable or advantageous to invest the funds of the estate in other securities of similar character, the said parties of the first part do further agree that it shall be lawful for said parties of the second part, as executors, to retain any such stock, bonds, securities or other personal estate of said deceased, as in their judgment may be proper and for the interest of said estate, and to invest and reinvest the proceeds of any securities, or money, or proceeds of sale of any real estate, in such other stocks, bonds or securities as they may deem proper and for the best interest of said estate, only upon the concurrence of all of said executors, and in so doing said party of the second part shall not be liable for any loss, depreciation or other impairment of said securities, or of

the funds or property of the estate, and shall only be liable and accountable for the loss arising from their wilful or fraudulent misconduct or default; each being responsible for his own misconduct or default and not one for the misconduct or default of another."

Other provisions. followed which are not relevant to this discussion, including a provision for the payment of salaries and commissions to the executors.

The estate has continued to be administered by the executors and trustees of William Walter Phelps, deceased, pursuant to the will and the terms of the above-quoted agreement, and from time to time as funds became available for that purpose partial distributions were made among the legatees.

The shares of National City Bank stock owned by William Walter Phelps at the time of his death had all been sold and disposed of by the executors prior to the death of Sheffield Phelps, but the said executors and trustees had from time to time invested the funds of the estate in other shares of the same stock, and held of said last-mentioned stock in December, 1902, when Sheffield Phelps died, 2,625 shares, of which 988 have since been distributed to the legatees.

At the present time John J. Phelps, the sole surviving executor of and trustee under the will of William Walter Phelps, deceased, holds 1,637 shares of the capital stock of the said National City Bank, all of which has been purchased since the death of William Walter Phelps and which he wishes to distribute among the legatees and their legal representatives, including the executors of the will of Sheffield Phelps, deceased.

At first the said surviving executor proposed to sell the said stock and to distribute the cash proceeds thereof, but at the request of the parties interested as distributees it was deemed inadvisable that the stock should be converted into cash, but was desired that it should be distributed in kind. The bank, however, declined to transfer the stock upon its books to the several distributees unless and until a waiver should be executed by the State Comptroller. As to the stock proposed to be distributed to the executors of Sheffield Phelps, deceased, the State Comptroller declined to execute a waiver, contending that said stock must be

deemed to have passed under the will of said Sheffield Phelps, and, being stock of a corporation domiciled in this State, was subject to taxation under the Transfer Tax Act.

The determination of this appeal depends, in the last analysis, upon the status of the executors and trustees named in the will of William Walter Phelps, deceased, after the execution of the agreement above quoted from. If by that agreement they held the estate merely as agents of the several distributees, so that their possession of the funds and securities in which those funds were invested was the possession of the several legatees, then Sheffield Phelps at his death was the owner of a proportionate share of the stock of the National City Bank concerning which this controversy has arisen, and that proportion is properly taxable in this State. If, however, the executors and trustees of William Walter Phelps continued, as well after the agreement was made as before, to hold the assets of the estate as executors and trustees, the only right Sheffield Phelps had at his death respecting the said shares, or any other portion of the estate, was to demand that a distribution be made, and that his proportionate share be paid over or delivered to him. This would have been a mere chose in action in favor of one non-resident against another and would not be taxable in this State.

In our opinion the latter construction of the agreement of July 18, 1894, is manifestly the correct one. The primary purpose of the agreement, as is shown by a careful reading, is to leave the executors of William Walter Phelps unhampered in their administration of the estate and to relieve them from the necessity, unless a certain number of the residuary legatees desired otherwise, of submitting their inventory and accounts to the Orphans' Court. This was doubtless deemed to be as much for the benefit and convenience of said legatees as of the executors. Beyond this the agreement proposed no change in the status of the executors, but on the contrary expressly provided that they should " proceed with the administration of the said estate and the discharge of their duties as such executors and trustees by payment of all debts, expenses and legacies." There is no word in the agreement, as we read it, which indicates that the parties to it intended and understood that they were then making a distribution of the

estate among the residuary legatees. On the contrary, it is expressly stated that one purpose of the agreement was, " so that *ultimately* a division can be made amongst the residuary legatees," and meanwhile " from time to time, as the condition of said estate will warrant," that the executors and trustees shall " make a partial distribution of said personal estate amongst the parties entitled thereto; and in case any of said reserved funds or securities shall not be further required for the purpose for which they are reserved, then will divide and distribute the same in like manner."

In our opinion this agreement did not in any way change the status of the executors and trustees, and until an actual distribution was made, whether partial or complete, the title and right to possession of the securities in which the estate was invested remained in the executors and trustees, and consequently no securities which said executors and trustees have purchased with the funds of the estate and held at the death of Sheffield Phelps, belonged to him or passed to his executors under his will. All that these latter executors succeeded to was what Sheffield Phelps had at his death, which was an equitable, undivided interest in his father's estate, and the right to call upon the executors to make distribution to him.

The question should not be beclouded because the surviving executor of William Walter Phelps now proposes to make distribution in specie, instead of selling the stock and distributing the proceeds. The result is precisely the same. The real and only question is whether Sheffield Phelps owned these particular shares of stock when he died, being a non-resident. We think it clear that he did not.

Neither of the cases relied upon by the State Comptroller is in point. In *Matter of Clinch* (180 N. Y. 300) the controversy arose over the right of a non-resident son to an interest in an undivided estate of a *resident* father, and it was held that although the son's interest at the time of his death in his father's estate was merely a chose in action, the *situs* of the estate in this State determined its taxability. In the present case both the father and son were non-residents and the *situs* of the father's estate was in a foreign State.

In *Matter of Wright* (214 N. Y. 714) the securities claimed

to be taxable were at the time of the death of the testatrix situated in this State and taxable herein. This case would have been parallel if the shares of stock to be presently distributed had belonged to William Walter Phelps at his death, which they did not, or had been distributed to and were owned by Sheffield Phelps at his death, which they had not been.

The order appealed from is right and must be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., SMITH and SHEARN, JJ., concurred; PAGE, J., dissented.

PAGE, J. (dissenting):

In my opinion the transfer of the shares of stock in the National City Bank by the death of Sheffield Phelps is subject to taxation under the laws of this State. It was entirely competent for the heirs and next of kin of William Walter Phelps to agree among themselves as to the distribution of the estate without administration. When they paid the debts and legacies, and created the trusts provided for by the will, and designated the same persons that were nominated in the will to execute the trusts, there was no one who could complain. The real and personal estate vested in them at the death of the testator. In the absence of a statute requiring the estate to be administered under judicial supervision, and it is not claimed that there is such a statute in New Jersey, a resort to the courts was not necessary. In such a case there are no executors of the will; for while the testator may nominate, the court alone can appoint, an executor. An executor is not vested with any title or power until he becomes so vested by letters testamentary. The effect of the agreement made by the heirs and next of kin was that the estate which had vested in them at the death of the testator should be held in common and not presently distributed, and certain persons were appointed as their agents to manage the property for them That the persons employed as agents were the same as those who had been nominated by the testator makes no difference; they are not thereby vested with the powers that attach to the office of executor. We are not concerned with the trusts created by the will, but solely with the rights of the residuary legatees, and, therefore, it is not neces-

sary on this appeal to consider the bearing of questions that might arise in that behalf. I have assumed that letters testamentary were not issued to the executors, as there is no allegation in the record that such letters were issued. If as a matter of fact letters were duly issued, when the executors and trustees sold the securities or property of the residuary estate and reinvested it under the power vested in them by the agreement, they held the securities in which the investment was made, not in their capacity as executors or trustees of the estate, but as the agents of the residuary legatees.

The stock of the National City Bank, which is the subject of this proceeding, was so purchased; and hence, although held in the names of the persons named as the executors and trustees of the estate, it was not in fact held by them as such executors and trustees. The money which was realized by the sale of the property of the estate, if paid over to the residuary legatees, would not have been taxable in this State. The reinvestment of this money by or on behalf of the residuary legatees does not reincorporate the stock into the estate of William Walter Phelps. Therefore, the transfer of this stock to the estate of Sheffield Phelps is not taxable as the transfer of an asset of the estate of his father.

In my opinion, at the time of Sheffield Phelps's death, his proportionate share of the National City Bank stock was held for him by his agents. Although, to make adjustment of the agency dealings and a proper distribution of the property held by the agents among the copartners, an accounting might be necessary, this did not make Sheffield Phelps's right to the property a mere chose in action. (*Matter of Houdayer*, 150 N. Y. 37; *Matter of Newcomb*, 71 App. Div. 606, 608; affd., on opinion below, 172 N. Y. 608.) Property held by an agent is the property of the principal, and possession of the agent is the possession of the principal. Therefore, these shares of stock are to be treated in this proceeding as though the stock stood in the name of Sheffield Phelps, and is taxable. (*Matter of Newcomb, supra.*)

The order of the surrogate should, therefore, be reversed, with costs, and the matter remitted to the Surrogate's Court to be sent to an appraiser.

Order affirmed, with ten dollars costs and disbursements.